## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

---

Wells Fargo Bank, N.A.,

               Plaintiff,

    v.

Terrace Mortgage Company,

               Defendant.

---

Case No. 13-cv-_____

**Complaint**

Plaintiff Wells Fargo Bank, N.A. ("Wells Fargo"), for its complaint against defendant Terrace Mortgage Company ("Terrace Mortgage") alleges as follows:

### Introduction

1.     Terrace Mortgage has a "correspondent lender" relationship with Wells Fargo.  In general, Terrace Mortgage issues loans either to home buyers purchasing new residences or to home owners who wish to refinance their residences.  Those loans are secured by mortgages on the borrowers' residences.  Terrace Mortgage then sells the mortgage loans to Wells Fargo (Terrace Mortgage previously sold mortgage loans to Wells Fargo Funding, Inc., which is now an unincorporated division of Wells Fargo).

2.     A written agreement governs the terms under which Terrace Mortgage sells mortgage loans to Wells Fargo.  The agreement requires Terrace Mortgage to:

(1) represent and warrant that each mortgage being sold has certain characteristics;

(2) repurchase from Wells Fargo any mortgage that does not possess those characteristics;

and (3) reimburse Wells Fargo for certain losses, costs, and expenses associated with any repurchased mortgage.

3.     Terrace Mortgage violated its contractual representations and warranties by selling to Wells Fargo at least 111 mortgage loans that did not have the required characteristics.  Terrace Mortgage further breached its contractual obligations by refusing to repurchase those loans and to indemnify Wells Fargo for certain losses, costs, and expenses that Wells Fargo incurred.  Terrace Mortgage also has refused to pay fees due to Wells Fargo with respect to other transactions under the terms of the parties' contract. Thus, Wells Fargo is suing to enforce Terrace Mortgage's contractual obligations.

## Parties

4.     Plaintiff Wells Fargo Bank, N.A. is a national banking association whose articles of association designate its main office as located in Sioux Falls, South Dakota, thus making it a citizen of South Dakota for purposes of diversity jurisdiction.

5.     Defendant Terrace Mortgage, Inc. is a Georgia corporation with its principal place of business in Atlanta, Georgia.

## Jurisdiction and Venue

6.     This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a) because Wells Fargo and Terrace Mortgage are citizens of different states (South Dakota and Georgia, respectively) and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

7.     This Court has personal jurisdiction over Terrace Mortgage because Terrace Mortgage contractually waived any objection to this Court's personal jurisdiction

and agreed that any lawsuit between the parties would be pursued in Minnesota. Additionally, Terrace Mortgage conducted business with Wells Fargo in Minnesota and committed acts that caused injury in Minnesota.

8.      Venue is proper in this Court under 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to the claims asserted in this action occurred in this District.  Specifically, Wells Fargo executed the contract between Wells Fargo and Terrace Mortgage in this District, Terrace Mortgage sold the loan at issue to Wells Fargo in Minnesota, and the parties' contract provides that all disputes between the parties will be brought in Minnesota.

## Facts

9.      On or about January 21, 1997, Terrace Mortgage and Wells Fargo entered into a Loan Purchase Agreement (the "LPA").  A copy of the LPA is attached hereto as Exhibit 1.  The LPA states the terms under which Terrace Mortgage may sell residential mortgage loans to Wells Fargo.

10.     Paragraph 1 of the LPA incorporates the terms of the Wells Fargo Funding, Inc. Seller Guide ("Seller Guide").  The Seller Guide sets forth the representations and warranties that Terrace Mortgage makes to Wells Fargo for every mortgage that Terrace Mortgage sells to Wells Fargo.

11.     Together, the LPA and Seller Guide (collectively, the "Contract") form the complete agreement between the parties.

12.     On May 23, 2011, Wells Fargo Funding, Inc. assigned to Wells Fargo Bank, N.A., all right, title, and interest in the Contract and the residential mortgage loans

that Terrace Mortgage sold to Wells Fargo Funding, Inc., including all causes of action and rights thereto.  Wells Fargo Bank, N.A. now possesses all rights in the Contract and is entitled to enforce the provisions of the Contract.

13.     In the Contract, Terrace Mortgage agreed that it would sell to Wells Fargo only mortgage loans that met the requirements described in the Seller Guide.

14.     Wells Fargo sold the loans that it purchased from Terrace Mortgage to various investors, including Fannie Mae and Freddie Mac, which are government-sponsored enterprises chartered by Congress to keep liquidity flowing to mortgage lenders such as local and national banks, thrifts, credit unions, and other financial institutions.  When loans that Terrace Mortgage sold to Wells Fargo, and Wells Fargo subsequently sold to an investor, did not meet the requirements of the purchasing investor, that purchasing investor would require Wells Fargo to repurchase and/or indemnify the investor for its losses on those loans.  When those loans were subsequently reviewed by Wells Fargo and found to not meet the requirements described in the Seller Guide between Wells Fargo and Terrace Mortgage (and were therefore ineligible for sale under the Contract), then Wells Fargo, in turn, is entitled to have Terrace Mortgage repurchase and/or indemnify Wells Fargo for its losses on those loans that do not meet the requirements of the Seller Guide.

15.     In addition to setting forth Terrace Mortgage's representations and warranties regarding the characteristics of the mortgage loans that Terrace Mortgage sold to Wells Fargo, the Contract also specified remedies for Wells Fargo should Terrace

Mortgage's contractual representations or warranties prove untrue with respect to a mortgage loan.

16.     In accordance with section 305.03 of the Seller Guide, Terrace Mortgage agreed that it would repurchase any loan that did not satisfy the contractual representations and warranties it had made to Wells Fargo.

17.     In accordance with section 305.10 of the Seller Guide, Terrace Mortgage further agreed to indemnify Wells Fargo for any liabilities, costs, and expenses, expressly including attorneys' fees, resulting from Terrace Mortgage's breach of any representation or warranty.

18.     In accordance with section 305.10 of the Seller Guide, Terrace Mortgage also expressly agreed to indemnify Wells Fargo for losses resulting from the Real Estate Owned ("REO") process by which Wells Fargo acquires title to a mortgaged property through such means as foreclosure, taking a deed in lieu of foreclosure, abandonment of the property, or other reclamation of the property.

**A.     Terrace Mortgage Breached Its Contractual Representations And Warranties With Regard To Loans It Sold To Wells Fargo.**

19.     Terrace Mortgage sold at least 111 mortgage loans to Wells Fargo that violated Terrace Mortgage's representations and warranties as set forth in the Contract.

**1.     The "New Hebron Loan"**

20.     On or about January 23, 2008, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 9354) secured by a property in New Hebron, Mississippi (the "New Hebron Loan").

A copy of the Funding Invoice, dated January 23, 2008, reflecting Wells Fargo's purchase of the New Hebron Loan is attached hereto as Exhibit 2.

21.     The New Hebron Loan has an outstanding balance of at least $94,054.82 in principal, interest, and escrow advance, in addition to applicable fees and bears an interest rate of 4.625%.

22.     The appraised value for the property securing the New Hebron Loan was unsupported by the original appraisal report included in the loan file.

23.     The New Hebron Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the New Hebron Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

24.     Wells Fargo is sustaining and will sustain further loss as a result of the New Hebron Loan not meeting the requirements of the Seller Guide.

25.     On or about July 7, 2010, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the New Hebron Loan and to pay fees and penalties as specified in the Contract.

26.     Terrace Mortgage refused to repurchase the New Hebron Loan from Wells Fargo and pay the fees and penalties specified in the Contract.

27.     The amount that Terrace Mortgage currently owes to Wells Fargo to repurchase the New Hebron Loan and pay fees and penalties under the Contract is at least $95,677.96 as of January 25, 2013, plus interest that continues to accrue at a variable rate.

**2.     The "Laurel Loan"**

28.     On or about May 14, 2008, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 3777) secured by a property in Laurel, Maryland (the "Laurel Loan").  A copy of the Funding Invoice, dated May 14, 2008, reflecting Wells Fargo's purchase of the Laurel Loan is attached hereto as Exhibit 3.

29.     The loan file for the Laurel Loan was supported by insufficient income.

30.     The Laurel Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Laurel Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

31.     The property securing the Laurel Loan was sold to an alternate investor.  As a result of that process, Wells Fargo incurred a loss with respect to the Laurel Loan.

32.     On or about July 21, 2010, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Laurel Loan and to pay fees and penalties as specified in the Contract.

33.     Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Laurel Loan and pay the fees and penalties specified in the Contract.

34.     The amount that Terrace Mortgage currently owes to Wells Fargo to repurchase the Laurel Loan and pay fees and penalties under the Contract is at least $103,090.01.

### 3.     The "First Atlanta Loan"

35.     On or about August 15, 2006, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan

are 2364) secured by a property in Atlanta, Georgia (the "First Atlanta Loan").  A copy of the Funding Invoice, dated August 15, 2006, reflecting Wells Fargo's purchase of the First Atlanta Loan is attached hereto as Exhibit 4.

36.     The First Atlanta Loan has an outstanding balance of at least $152,601.91 in principal, interest, and escrow advance, in addition to applicable fees and bears an interest rate of 7.25%.

37.     The appraised value for the property securing the First Atlanta Loan was unsupported by the original appraisal report included in the loan file.

38.     The First Atlanta Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the First Atlanta Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

39.     Wells Fargo is sustaining and will sustain further loss as a result of the First Atlanta Loan not meeting the requirements of the Seller Guide.

40.     On or about September 7, 2010, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the First Atlanta Loan and to pay fees and penalties as specified in the Contract.

41.     Terrace Mortgage refused to repurchase the First Atlanta Loan from Wells Fargo and pay the fees and penalties specified in the Contract.

42.     The amount that Terrace Mortgage currently owes to Wells Fargo to repurchase the First Atlanta Loan and pay fees and penalties under the Contract is at least

$155,685.90 as of January 25, 2013, plus interest that continues to accrue at a variable rate.

### 4.      The "Rincon Loan"

43.      On or about March 16, 2007, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 1079) secured by a property in Rincon, Georgia (the "Rincon Loan").  A copy of the Funding Invoice, dated March 16, 2007, reflecting Wells Fargo's purchase of the Rincon Loan is attached hereto as Exhibit 5.

44.      The Rincon Loan has an outstanding balance of at least $188,442.78 in principal, interest, and escrow advance, in addition to applicable fees and bears an interest rate of 6.25%.

45.      The loan file for the Rincon Loan was missing required asset documentation.

46.      Additionally, there was a previous indemnification on the property securing the Rincon Loan.

47.      The Rincon Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Rincon Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

48.      Wells Fargo is sustaining and will sustain further loss as a result of the Rincon Loan not meeting the requirements of the Seller Guide.

49.     On or about September 21, 2010, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Rincon Loan and to pay fees and penalties as specified in the Contract.

50.     Terrace Mortgage refused to repurchase the Rincon Loan from Wells Fargo and pay the fees and penalties specified in the Contract.

51.     The amount that Terrace Mortgage currently owes to Wells Fargo to repurchase the Rincon Loan and pay fees and penalties under the Contract is at least $188,275.78 as of January 25, 2013, plus interest that continues to accrue at a variable rate.

### 5.     The "Detroit Loan"

52.     On or about March 21, 2008, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 8813) secured by a property in Detroit, Michigan (the "Detroit Loan").  A copy of the Funding Invoice, dated March 21, 2008, reflecting Wells Fargo's purchase of the Detroit Loan is attached hereto as Exhibit 6.

53.     The appraised value for the property securing the Detroit Loan was unsupported by the original appraisal report included in the loan file.

54.     The Detroit Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Detroit Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

55.     The property securing the Detroit Loan was sold through the REO Process. As a result of that process, Wells Fargo incurred a loss with respect to the Detroit Loan.

56.     On or about November 4, 2010, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Detroit Loan and to pay fees and penalties as specified in the Contract.

57.     Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Detroit Loan and refused to pay fees and penalties as specified in the Contract.

58.     The amount that Terrace Mortgage currently owes to Wells Fargo to repurchase the Detroit Loan and pay fees and penalties under the Contract is at least $94,807.21.

### 6.     The "Tucker Loan"

59.     On or about September 11, 2007, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 0743) secured by a property in Tucker, Georgia (the "Tucker Loan").  A copy of the Funding Invoice, dated September 11, 2007, reflecting Wells Fargo's purchase of the Tucker Loan is attached hereto as Exhibit 7.

60.     The Tucker Loan has an outstanding balance of at least $93,236.73 in principal, interest, and escrow advance, in addition to applicable fees and bears an interest rate of 6.50%.

61.     The loan file for the Tucker Loan was missing rental income documentation.

62.     The Tucker Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Tucker Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

63.     Wells Fargo is sustaining and will sustain further loss as a result of the Tucker Loan not meeting the requirements of the Seller Guide.

64.     On or about November 4, 2010, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Tucker Loan and to pay fees and penalties as specified in the Contract.

65.     Terrace Mortgage refused to repurchase the Tucker Loan from Wells Fargo and pay the fees and penalties specified in the Contract.

66.     The amount that Terrace Mortgage currently owes to Wells Fargo to repurchase the Tucker Loan and pay fees and penalties under the Contract is at least $95,205.38 as of January 25, 2013, plus interest that continues to accrue at a variable rate.

**7.     The "First Buford Loan"**

67.     On or about May 2, 2007, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 7692) secured by a property in Buford, Georgia (the "First Buford Loan").  A copy of the Funding Invoice, dated May 2, 2007, reflecting Wells Fargo's purchase of the First Buford Loan is attached hereto as Exhibit 8.

68.     The loan file for the First Buford Loan contained misrepresentations regarding the income and/or assets of the borrower for that loan.

69.     The First Buford Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the First Buford Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

70.     The property securing the First Buford Loan was sold to an alternate investor.  As a result of that process, Wells Fargo incurred a loss with respect to the First Buford Loan.

71.     On or about February 7, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the First Buford Loan and/or indemnify Wells Fargo for its loss on the First Buford Loan and to pay fees and penalties as specified in the Contract.

72.     Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the First Buford Loan and pay the fees and penalties specified in the Contract.

73.     The amount that Terrace Mortgage currently owes to Wells Fargo to repurchase the First Buford Loan and pay fees and penalties under the Contract is at least $67,780.71.

## 8.     The "Bainbridge Loan"

74.     On or about May 27, 2008, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 7128) secured by a property in Bainbridge, Georgia (the "Bainbridge Loan").  A copy of the Funding Invoice, dated May 27, 2008, reflecting Wells Fargo's purchase of the Bainbridge Loan is attached hereto as Exhibit 9.

75.     The loan file for the Bainbridge Loan had understated obligations.

76.     The Bainbridge Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Bainbridge Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

77.     The property securing the Bainbridge Loan was sold to an alternate investor.  As a result of that process, Wells Fargo incurred a loss with respect to the Bainbridge Loan.

78.     On or about March 18, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Bainbridge Loan and to pay fees and penalties as specified in the Contract.

79.     Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Bainbridge Loan and pay the fees and penalties specified in the Contract.

80.     The amount that Terrace Mortgage currently owes to Wells Fargo to repurchase the Bainbridge Loan and pay fees and penalties under the Contract is at least $83,085.72.

### 9.      The "Second Buford Loan"

81.     On or about July 15, 2008, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 5804) secured by a property in Buford, Georgia (the "Second Buford Loan").  A copy of the Funding Invoice, dated July 15, 2008, reflecting Wells Fargo's purchase of the Second Buford Loan is attached hereto as Exhibit 10.

82.     The Second Buford Loan has an outstanding balance of at least $99,154.40 in principal, interest, and escrow advance, in addition to applicable fees and bears an interest rate of 6.625%.

83.     The appraised value for the property securing the Second Buford Loan was unsupported by the original appraisal report included in the loan file.

84.     Additionally, the loan file contained a misrepresentation that the borrower intended to occupy the property securing the Second Buford Loan.

85.     The Second Buford Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Second Buford Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

86.     Wells Fargo is sustaining and will sustain further loss as a result of the Second Buford Loan not meeting the requirements of the Seller Guide.

87.     On or about April 20, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Second Buford Loan and to pay fees and penalties as specified in the Contract.

88.     Terrace Mortgage refused to repurchase the Second Buford Loan from Wells Fargo and pay the fees and penalties specified in the Contract.

89.     The amount that Terrace Mortgage currently owes to Wells Fargo to repurchase the Second Buford Loan and pay fees and penalties under the Contract is at least $100,736.70 as of January 25, 2013, plus interest that continues to accrue at a variable rate.

### 10.   The "Second Atlanta Loan"

90.      On or about September 5, 2008, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 6296) secured by a property in Atlanta, Georgia (the "Second Atlanta Loan").  A copy of the Funding Invoice, dated September 5, 2008, reflecting Wells Fargo's purchase of the Second Atlanta Loan is attached hereto as Exhibit 11.

91.      The Second Atlanta Loan has an outstanding balance of at least $393,044.13 in principal, interest, and escrow advance, in addition to applicable fees and bears an interest rate of 6.125%.

92.      The property securing the Second Atlanta Loan violated the program conditions by operating as a condo-hotel.

93.      The Second Atlanta Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Second Atlanta Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

94.      Wells Fargo is sustaining and will sustain further loss as a result of the Second Atlanta Loan not meeting the requirements of the Seller Guide.

95.      On or about June 20, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Second Atlanta Loan and to pay fees and penalties as specified in the Contract.

96.      Terrace Mortgage refused to repurchase the Second Atlanta Loan from Wells Fargo and pay the fees and penalties specified in the Contract.

97.     The amount that Terrace Mortgage currently owes to Wells Fargo to repurchase the Second Atlanta Loan and pay fees and penalties under the Contract is at least $401,676.36 as of January 25, 2013, plus interest that continues to accrue at a variable rate.

### 11.     The "Third Atlanta Loan"

98.     On or about April 29, 2008, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 3421) secured by a property in Atlanta, Georgia (the "Third Atlanta Loan").  A copy of the Funding Invoice, dated April 29, 2008, reflecting Wells Fargo's purchase of the Third Atlanta Loan is attached hereto as Exhibit 12.

99.     The appraised value for the property securing the Third Atlanta Loan was unsupported by the original appraisal report included in the loan file.

100.     The Third Atlanta Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Third Atlanta Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

101.     The property securing the Third Atlanta Loan was sold through the REO process.  As a result of that process, Wells Fargo incurred a loss with respect to the Third Atlanta Loan.

102.     On or about August 8, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Third Atlanta Loan and to pay fees and penalties as specified in the Contract.

103.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Third Atlanta Loan and pay the fees and penalties specified in the Contract.

104.    The amount that Terrace Mortgage currently owes to Wells Fargo to repurchase the Third Atlanta Loan and pay fees and penalties under the Contract is at least $210,751.10.

### 12.    The "Knoxville Loan"

105.    On or about May 30, 2008, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 0852) secured by a property in Knoxville, Tennessee (the "Knoxville Loan").  A copy of the Funding Invoice, dated May 30, 2008, reflecting Wells Fargo's purchase of the Knoxville Loan is attached hereto as Exhibit 13.

106.    The Knoxville Loan has an outstanding balance of at least $342,637.57 in principal, interest, and escrow advance, in addition to applicable fees and bears an interest rate of 5.625%.

107.    The property securing the Knoxville Loan had an undisclosed debt.

108.    The Knoxville Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Knoxville Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

109.    Wells Fargo is sustaining and will sustain further loss as a result of the Knoxville Loan not meeting the requirements of the Seller Guide.

110.    On or about August 18, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Knoxville Loan and to pay fees and penalties as specified in the Contract.

111.    Terrace Mortgage refused to repurchase the Knoxville Loan from Wells Fargo and pay the fees and penalties specified in the Contract.

112.    The amount that Terrace Mortgage currently owes to Wells Fargo to repurchase the Knoxville Loan and pay fees and penalties under the Contract is at least $375,347.92 as of January 25, 2013, plus interest that continues to accrue at a variable rate.

### 13.    The "Monroe Loan"

113.    On or about September 25, 2008, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 8528) secured by a property in Monroe, Georgia (the "Monroe Loan").  A copy of the Funding Invoice, dated September 25, 2008, reflecting Wells Fargo's purchase of the Monroe Loan is attached hereto as Exhibit 14.

114.    The Monroe Loan has an outstanding balance of at least $258,779.10 in principal, interest, and escrow advance, in addition to applicable fees and bears an interest rate of 6.875%.

115.    The loan file for the Monroe Loan contained a misrepresentation of the borrower's employment.

116.    The Monroe Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Monroe Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

117.    Wells Fargo is sustaining and will sustain further loss as a result of the Monroe Loan not meeting the requirements of the Seller Guide.

118.    On or about November 4, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Monroe Loan and to pay fees and penalties as specified in the Contract.

119.    Terrace Mortgage refused to repurchase the Monroe Loan from Wells Fargo and pay the fees and penalties specified in the Contract.

120.    The amount that Terrace Mortgage currently owes to Wells Fargo to repurchase the Monroe Loan and pay fees and penalties under the Contract is at least $264,137.86 as of January 25, 2013, plus interest that continues to accrue at a variable rate.

**14.    The "First Lithonia Loan"**

121.    On or about April 21, 2008, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 6861) secured by a property in Lithonia, Georgia (the "First Lithonia Loan").  A copy of the Funding Invoice, dated April 21, 2008, reflecting Wells Fargo's purchase of the First Lithonia Loan is attached hereto as Exhibit 15.

122.     The First Lithonia Loan has an outstanding balance of at least $102,636.60 in principal, interest, and escrow advance, in addition to applicable fees and bears an interest rate of 6.125%.

123.     The borrower's income in the loan file for the First Lithonia Loan was overstated.

124.     The First Lithonia Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the First Lithonia Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

125.     Wells Fargo is sustaining and will sustain further loss as a result of the First Lithonia Loan not meeting the requirements of the Seller Guide.

126.     On or about November 18, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the First Lithonia Loan and to pay fees and penalties as specified in the Contract.

127.     Terrace Mortgage refused to repurchase the First Lithonia Loan from Wells Fargo and pay the fees and penalties specified in the Contract.

128.     The amount that Terrace Mortgage currently owes to Wells Fargo to repurchase the First Lithonia Loan and pay fees and penalties under the Contract is at least $104,682.41 as of January 25, 2013, plus interest that continues to accrue at a variable rate.

### 15.     The "Plantation Loan"

129.    On or about November 7, 2006, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 1391) secured by a property in Plantation, Florida (the "Plantation Loan").  A copy of the Funding Invoice, dated November 7, 2006, reflecting Wells Fargo's purchase of the Plantation Loan is attached hereto as Exhibit 16.

130.    The loan file for the Plantation Loan contained DU findings with an EA111/Eligible are not acceptable for delivery.

131.    The Plantation Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Plantation Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

132.    The property securing the Plantation Loan was sold to an alternate investor. As a result of that process, Wells Fargo incurred a loss with respect to the Plantation Loan.

133.    On or about January 23, 2012, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Plantation Loan and to pay fees and penalties as specified in the Contract.

134.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Plantation Loan and pay the fees and penalties specified in the Contract.

135.    The amount that Terrace Mortgage currently owes to Wells Fargo to repurchase the Plantation Loan and pay fees and penalties under the Contract is at least $61,995.53.

**16.    The "Melbourne Loan"**

136.    On or about August 14, 2008, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 6473) secured by a property in Melbourne, Florida (the "Melbourne Loan").  A copy of the Funding Invoice, dated August 14, 2008, reflecting Wells Fargo's purchase of the Melbourne Loan is attached hereto as Exhibit 17.

137.    The Melbourne Loan has an outstanding balance of at least $84,689.62 in principal, interest, and escrow advance, in addition to applicable fees and bears an interest rate of 2.00%.

138.    The property securing the Melbourne Loan had an undisclosed debt.

139.    The Melbourne Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Melbourne Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

140.    Wells Fargo is sustaining and will sustain further loss as a result of the Melbourne Loan not meeting the requirements of the Seller Guide.

141.    On or about April 19, 2012, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Melbourne Loan and to pay fees and penalties as specified in the Contract.

142.    Terrace Mortgage refused to repurchase the Melbourne Loan from Wells Fargo and pay the fees and penalties specified in the Contract.

143.    The amount that Terrace Mortgage currently owes to Wells Fargo to repurchase the Melbourne Loan and pay fees and penalties under the Contract is at least $86,017.03 as of January 25, 2013, plus interest that continues to accrue at a variable rate.

### 17. The "First Fayetteville Loan"

144. On or about October 8, 2008, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 9749) secured by a property in Fayetteville, Georgia (the "First Fayetteville Loan"). A copy of the Funding Invoice, dated October 8, 2008, reflecting Wells Fargo's purchase of the First Fayetteville Loan is attached hereto as Exhibit 18.

145. The appraised value for the property securing the First Fayetteville Loan was unsupported by the original appraisal report included in the loan file.

146. The First Fayetteville Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the First Fayetteville Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

147. The property securing the First Fayetteville Loan was sold to an alternate investor. As a result of that process, Wells Fargo incurred a loss with respect to the First Fayetteville Loan.

148. On or about May 4, 2012, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the First Fayetteville Loan and to pay fees and penalties as specified in the Contract.

149. Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the First Fayetteville Loan and refused to pay the fees and penalties specified in the Contract.

150.    The amount that Terrace Mortgage currently owes to Wells Fargo to repurchase the First Fayetteville Loan and pay fees and penalties under the Contract is at least $151,881.02.

### 18.    The "First Dallas Loan"

151.    On or about July 19, 2007, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 4126) secured by a property in Dallas, Georgia (the "First Dallas Loan").  A copy of the Funding Invoice, dated July 19, 2007, reflecting Wells Fargo's purchase of the First Dallas Loan is attached hereto as Exhibit 19.

152.    The DU credit condition for the First Dallas Loan was not met.

153.    The First Dallas Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the First Dallas Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

154.    The property securing the First Dallas Loan was sold to an alternate investor.  As a result of that process, Wells Fargo incurred a loss with respect to the First Dallas Loan.

155.    On or about May 4, 2012, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the First Dallas Loan and to pay fees and penalties as specified in the Contract.

156.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the First Dallas Loan and refused to pay the fees and penalties specified in the Contract.

157.     The amount that Terrace Mortgage currently owes to Wells Fargo to repurchase the First Dallas Loan and pay fees and penalties under the Contract is at least $115,817.08.

### 19.     The "First Duluth Loan"

158.     On or about June 3, 2008 Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 7775) secured by a property in Duluth, Georgia (the "First Duluth Loan").  A copy of the Funding Invoice, dated June 2, 2008, reflecting Wells Fargo's purchase of the First Duluth Loan is attached hereto as Exhibit 20.

159.     The loan file for the First Duluth Loan contained an undisclosed debt.

160.     The First Duluth Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the First Duluth Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

161.     The property securing the First Duluth Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the First Duluth Loan.

162.     On or about May 18, 2012, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the First Duluth Loan and to pay the fees and penalties specified in the Contract.

163.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the First Duluth Loan and refused to pay fees and penalties as specified in the Contract.

164.    The amount that Terrace Mortgage currently owes to Wells Fargo to repurchase the First Duluth Loan and pay fees and penalties under the Contract is at least $68,847.24.

### 20.    The "First Riverdale Loan"

165.    On or about August 28, 2007 Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 4783) secured by a property in Riverdale, Georgia (the "First Riverdale Loan").  A copy of the Funding Invoice, dated August 28, 2007, reflecting Wells Fargo's purchase of the First Riverdale Loan is attached hereto as Exhibit 21.

166.    The First Riverdale Loan has an outstanding balance of at least $138,629.31 in principal, interest, and escrow advance, in addition to applicable fees and bears an interest rate of 2.000%.

167.    The appraised value for the property securing the First Riverdale Loan was unsupported by the original appraisal report included in the loan file.

168.    The First Riverdale Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the First Riverdale Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

169.    Wells Fargo is sustaining and will sustain further loss as a result of the First Riverdale Loan not meeting the requirements of the Seller Guide.

170.     On or about June 1, 2012, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the First Riverdale Loan and to pay fees and penalties as specified in the Contract.

171.     Terrace Mortgage refused to repurchase the First Riverdale Loan from Wells Fargo and pay the fees and penalties specified in the Contract.

172.     The amount that Terrace Mortgage currently owes to Wells Fargo to repurchase the First Riverdale Loan and pay fees and penalties under the Contract is at least $141,661.84 as of January 25, 2013, plus interest that continues to accrue at a variable rate.

## 21.     The "Second Riverdale Loan"

173.     On or around January 14, 2008, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 2813) secured by a property in Riverdale, Georgia (the "Second Riverdale Loan").  A copy of the portion of the Loan Purchase Schedule, dated January 14, 2008, reflecting Wells Fargo's purchase of the Second Riverdale Loan is attached hereto as Exhibit 22.

174.     The mortgage insurance for the property securing the Second Riverdale Loan was rescinded.

175.     Additionally, the appraised value for the property securing the Second Riverdale Loan was unsupported by the original appraisal report included in the loan file.

176.     The Second Riverdale Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Second Riverdale Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

177.    The property securing the Second Riverdale Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the Second Riverdale Loan.

178.    On or around December 18, 2009, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Second Riverdale Loan and/or indemnify Wells Fargo for its loss on the Second Riverdale Loan and to pay fees and penalties as specified in the Contract.

179.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Second Riverdale Loan and refused to pay fees and penalties as specified in the Contract.

180.    The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Second Riverdale Loan and pay fees and penalties under the Contract is at least $93,896.09.

### 22.    The "First Tampa Loan"

181.    On or around February 29, 2008, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 9043) secured by a property in Tampa, Florida (the "First Tampa Loan").  A copy of the portion of the Loan Purchase Schedule, dated February 29, 2008, reflecting Wells Fargo's purchase of the First Tampa Loan is attached hereto as Exhibit 23.

182.    The loan file for the First Tampa Loan contained misrepresentations regarding occupancy.

183.    Additionally, the appraised value for the property securing the Second Riverdale Loan was unsupported by the original appraisal report included in the loan file.

184.    The First Tampa Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the First Tampa Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

185.    The property securing the First Tampa Loan was sold to an alternate investor.  As a result of that process, Wells Fargo incurred a loss with respect to the First Tampa Loan.

186.    On or around May 6, 2010, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the First Tampa Loan and/or indemnify Wells Fargo for its loss on the First Tampa Loan and to pay fees and penalties as specified in the Contract.

187.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the First Tampa Loan and refused to pay fees and penalties as specified in the Contract.

188.    The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the First Tampa Loan and pay fees and penalties under the Contract is at least $152,948.78.

### 23.    The "First Stone Mountain Loan"

189.    On or around April 9, 2008, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 5102) secured by a property in Stone Mountain, Georgia (the "First Stone Mountain

Loan"). A copy of the portion of the Loan Purchase Schedule, dated April 9, 2008, reflecting Wells Fargo's purchase of the First Stone Mountain Loan is attached hereto as Exhibit 24.

190.    The loan file for the First Stone Mountain Loan contained misrepresentations regarding occupancy.

191.    Additionally, the property secured for the First Stone Mountain Loan had an undisclosed mortgage.

192.    The First Stone Mountain Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the First Stone Mountain Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

193.    The property securing the First Stone Mountain Loan was sold through the REO Process. As a result of that process, Wells Fargo incurred a loss with respect to the First Stone Mountain Loan.

194.    On or around May 20, 2010, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the First Stone Mountain Loan and/or indemnify Wells Fargo for its loss on the First Stone Mountain Loan and to pay fees and penalties as specified in the Contract.

195.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the First Stone Mountain Loan and refused to pay fees and penalties as specified in the Contract.

196.     The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the First Stone Mountain Loan and pay fees and penalties under the Contract is at least $82,279.93.

### 24.     The "Greenville Loan"

197.     On or around August 15, 2008, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 0755) secured by a property in Greenville, South Carolina (the "Greenville Loan").  A copy of the portion of the Loan Purchase Schedule, dated August 15, 2008, reflecting Wells Fargo's purchase of the Greenville Loan is attached hereto as Exhibit 25.

198.     The loan file for the Greenville Loan contained misrepresentations regarding the occupancy.

199.     The Greenville Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Greenville Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

200.     The property securing the Greenville Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the Greenville Loan.

201.     On or around June 3, 2010, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Greenville Loan and/or indemnify Wells Fargo for its loss on the Greenville Loan and to pay fees and penalties as specified in the Contract.

202.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Greenville Loan and refused to pay fees and penalties as specified in the Contract.

203.    The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Greenville Loan and pay fees and penalties under the Contract is at least $57,192.00.

## 25.    The "Third Buford Loan"

204.    On or around May 24, 2007, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 1247) secured by a property in Buford, Georgia (the "Third Buford Loan").  A copy of the portion of the Loan Purchase Schedule, dated May 24, 2007, reflecting Wells Fargo's purchase of the Third Buford Loan is attached hereto as Exhibit 26.

205.    The Third Buford Loan has an outstanding balance of at least $207,066.88 in principal, interest, and escrow advance, in addition to applicable fees and bears an interest rate of 0.06125%.

206.    The loan file for the Third Buford Loan contained misrepresentations regarding occupancy for that loan.

207.    The Third Buford Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Third Buford Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

208.    Wells Fargo is sustaining and will sustain further loss as a result of the Third Buford Loan not meeting the requirements of the Seller Guide.

209.    On or around June 3, 2010, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Third Buford Loan and/or indemnify Wells Fargo for its loss on the Third Buford Loan and to pay fees and penalties as specified in the Contract.

210.    Terrace Mortgage refused to repurchase the Third Buford Loan from Wells Fargo and pay the fees and penalties specified in the Contract.

211.    The amount that Terrace Mortgage currently owes to Wells Fargo to repurchase the Third Buford Loan and pay fees and penalties under the Contract is at least $211,646.51 as of January 25, 2013, plus interest that continues to accrue at a variable rate.

### 26.    The "First Kissimmee Loan"

212.    On or around December 6, 2006, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 2193) secured by a property in Kissimmee, Florida (the "First Kissimmee Loan").  A copy of the portion of the Loan Purchase Schedule, dated December 6, 2006, reflecting Wells Fargo's purchase of the First Kissimmee Loan is attached hereto as Exhibit 27.

213.    The loan file for the First Kissimmee Loan contained misrepresentations and undisclosed obligations.

214.    The First Kissimmee Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the First Kissimmee Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

215.    The property securing the First Kissimmee Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the First Kissimmee Loan.

216.    On or around June 3, 2010, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the First Kissimmee Loan and/or indemnify Wells Fargo for its loss on the First Kissimmee Loan and to pay fees and penalties as specified in the Contract.

217.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the First Kissimmee Loan and refused to pay fees and penalties as specified in the Contract.

218.    The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the First Kissimmee Loan and pay fees and penalties under the Contract is at least $149,729.92.

### 27.    The "Second Kissimmee Loan"

219.    On or around August 1, 2008, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 6102) secured by a property in Kissimmee, Florida (the "Second Kissimmee Loan"). A copy of the portion of the Loan Purchase Schedule, dated August 1, 2008, reflecting Wells Fargo's purchase of the Second Kissimmee Loan is attached hereto as Exhibit 28.

220.    The loan file for the Second Kissimmee Loan was missing required documentation.

221.    The Second Kissimmee Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Second Kissimmee Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

222.    The property securing the Second Kissimmee Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the Second Kissimmee Loan.

223.    On or around June 3, 2010, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Second Kissimmee Loan and/or indemnify Wells Fargo for its loss on the Second Kissimmee Loan and to pay fees and penalties as specified in the Contract.

224.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Second Kissimmee Loan and refused to pay fees and penalties as specified in the Contract.

225.    The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Second Kissimmee Loan and pay fees and penalties under the Contract is at least $259,295.23.

### 28.    The "Palm Coast Loan"

226.    On or around April 2, 2008, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 8289) secured by a property in Palm Coast, Florida (the "Palm Coast Loan").  A copy of the portion of the Loan Purchase Schedule, dated April 2, 2008, reflecting Wells Fargo's purchase of the Palm Coast Loan is attached hereto as Exhibit 29.

227.     The loan file for the Palm Coast Loan contained misrepresentations regarding occupancy.

228.     The Palm Coast Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Palm Coast Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

229.     The property securing the Palm Coast Loan was sold to an alternate investor.  As a result of that process, Wells Fargo incurred a loss with respect to the Palm Coast Loan.

230.     On or around July 21, 2010, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Palm Coast Loan and/or indemnify Wells Fargo for its loss on the Palm Coast Loan and to pay fees and penalties as specified in the Contract.

231.     Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Palm Coast Loan and refused to pay fees and penalties as specified in the Contract.

232.     The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Palm Coast Loan and pay fees and penalties under the Contract is at least $192,973.94.

### 29.     The "First Douglasville Loan"

233.     On or around April 17, 2008, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 0189) secured by a property in Douglasville, Georgia (the "First Douglasville Loan").

A copy of the portion of the Loan Purchase Schedule, dated April 17, 2008, reflecting Wells Fargo's purchase of the First Douglasville Loan is attached hereto as Exhibit 30.

234.     The appraised value for the property securing the Douglasville Loan was unsupported by the original appraisal report included in the loan file.

235.     The First Douglasville Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the First Douglasville Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

236.     The property securing the First Douglasville Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the First Douglasville Loan.

237.     On or around July 21, 2010, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the First Douglasville Loan and/or indemnify Wells Fargo for its loss on the First Douglasville Loan and to pay fees and penalties as specified in the Contract.

238.     Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the First Douglasville Loan and refused to pay fees and penalties as specified in the Contract.

239.     The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the First Douglasville Loan and pay fees and penalties under the Contract is at least $68,488.31.

### 30.   The "Dacula Loan"

240.   On or around October 2, 2007, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 1354) secured by a property in Dacula, Georgia (the "Dacula Loan").  A copy of the portion of the Loan Purchase Schedule, dated October 2, 2007, reflecting Wells Fargo's purchase of the Dacula Loan is attached hereto as Exhibit 31.

241.   The loan file for the Dacula Loan contained misrepresentations regarding the income and/or assets of the borrower for that loan.

242.   The Dacula Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Dacula Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

243.   The property securing the Dacula Loan was sold through the REO Process. As a result of that process, Wells Fargo incurred a loss with respect to the Dacula Loan.

244.   On or around July 21, 2010, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Dacula Loan and/or indemnify Wells Fargo for its loss on the Dacula Loan and to pay fees and penalties as specified in the Contract.

245.   Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Dacula Loan and refused to pay fees and penalties as specified in the Contract.

246.    The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Dacula Loan and pay fees and penalties under the Contract is at least $309,689.72.

### 31.    The "Navarre Loan"

247.    On or around May 3, 2005, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 6217) secured by a property in Navarre, Florida (the "Navarre Loan").  A copy of the portion of the Loan Purchase Schedule, dated May 2, 2005, reflecting Wells Fargo's purchase of the Navarre Loan is attached hereto as Exhibit 32.

248.    The appraised value for the property securing the Navarre Loan was unsupported by the original appraisal report included in the loan file.

249.    The Navarre Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Navarre Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

250.    The property securing the Navarre Loan was sold through the REO Process. As a result of that process, Wells Fargo incurred a loss with respect to the Navarre Loan.

251.    On or around July 21, 2010, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Navarre Loan and/or indemnify Wells Fargo for its loss on the Navarre Loan and to pay fees and penalties as specified in the Contract.

252.     Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Navarre Loan and refused to pay fees and penalties as specified in the Contract.

253.     The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Navarre Loan and pay fees and penalties under the Contract is at least $78,120.01.

### 32.     The "Norcross Loan"

254.     On or around September 15, 2005, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 3506) secured by a property in Norcross, Georgia (the "Norcross Loan").  A copy of the portion of the Loan Purchase Schedule, dated September 14, 2005, reflecting Wells Fargo's purchase of the Norcross Loan is attached hereto as Exhibit 33.

255.     The loan file for the Norcross Loan contained misrepresentations regarding the borrower's assets.

256.     The Norcross Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Norcross Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

257.     The property securing the Norcross Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the Norcross Loan.

258.     On or around July 21, 2010, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to

repurchase the Norcross Loan and/or indemnify Wells Fargo for its loss on the Norcross

Loan and to pay fees and penalties as specified in the Contract.

259.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it

incurred on the Norcross Loan and refused to pay fees and penalties as specified in the

Contract.

260.    The amount that Terrace Mortgage currently owes to Wells Fargo to

indemnify Wells Fargo for its loss on the Norcross Loan and pay fees and penalties under

the Contract is at least $65,284.88.

### 33.    The "First Cape Coral Loan"

261.    On or around September 19, 2006, Terrace Mortgage sold to Wells Fargo a

residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan

are 4794) secured by a property in Cape Coral, Florida (the "First Cape Coral Loan").  A

copy of the portion of the Loan Purchase Schedule, dated September 19, 2006, reflecting

Wells Fargo's purchase of the First Cape Coral Loan is attached hereto as Exhibit 34.

262.    The loan file for the First Cape Coral Loan had missing documentation.

263.    Additionally, the loan file for the First Cape Coral Loan had excessive

combined-loan-to-value amounts that required mortgage insurance.

264.    The First Cape Coral Loan did not meet the requirements of the Seller

Guide, and Terrace Mortgage's sale of the First Cape Coral Loan constituted a violation of

Terrace Mortgage's contractual representations and warranties to Wells Fargo.

265.     The property securing the First Cape Coral Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the First Cape Coral Loan.

266.     On or around August 19, 2010, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the First Cape Coral Loan and/or indemnify Wells Fargo for its loss on the First Cape Coral Loan and to pay fees and penalties as specified in the Contract.

267.     Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the First Cape Coral Loan and refused to pay fees and penalties as specified in the Contract.

268.     The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the First Cape Coral Loan and pay fees and penalties under the Contract is at least $232,473.71.

### 34.     The "Second Lithonia Loan"

269.     On or around May 15, 2006, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 3131) secured by a property in Lithonia, Georgia (the "Second Lithonia Loan").  A copy of the portion of the Loan Purchase Schedule, dated May 15, 2006, reflecting Wells Fargo's purchase of the Second Lithonia Loan is attached hereto as Exhibit 35.

270.     The loan file for the Second Lithonia Loan had undisclosed obligations.

271.     The Second Lithonia Loan did not meet the requirements of the Seller

Guide, and Terrace Mortgage's sale of the Second Lithonia Loan constituted a violation of

Terrace Mortgage's contractual representations and warranties to Wells Fargo.

272.     The property securing the Second Lithonia Loan was sold through the REO

Process.  As a result of that process, Wells Fargo incurred a loss with respect to the

Second Lithonia Loan.

273.     On or around August 19, 2010, Wells Fargo sent an invoice to Terrace

Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to

repurchase the Second Lithonia Loan and/or indemnify Wells Fargo for its loss on the

Second Lithonia Loan and to pay fees and penalties as specified in the Contract.

274.     Terrace Mortgage refused to indemnify Wells Fargo for the loss that it

incurred on the Second Lithonia Loan and refused to pay fees and penalties as specified in

the Contract.

275.     The amount that Terrace Mortgage currently owes to Wells Fargo to

indemnify Wells Fargo for its loss on the Second Lithonia Loan and pay fees and penalties

under the Contract is at least $47,498.79.

### 35.     The "Fourth Atlanta Loan"

276.     On or around June 1, 2007, Terrace Mortgage sold to Wells Fargo a

residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan

are 7279) secured by a property in Atlanta, Georgia (the "Fourth Atlanta Loan").  A copy

of the portion of the Loan Purchase Schedule, dated June 1, 2007, reflecting Wells Fargo's

purchase of the Fourth Atlanta Loan is attached hereto as Exhibit 36.

277.     The loan file for the Fourth Atlanta Loan contained misrepresentations regarding the income and/or assets of the borrower for that loan.

278.     Additionally, he appraised value for the property securing the Fourth Atlanta Loan was unsupported by the original appraisal report included in the loan file.

279.     The Fourth Atlanta Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Fourth Atlanta Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

280.     The property securing the Fourth Atlanta Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the Fourth Atlanta Loan.

281.     On or around August 19, 2010, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Fourth Atlanta Loan and/or indemnify Wells Fargo for its loss on the Fourth Atlanta Loan and to pay fees and penalties as specified in the Contract.

282.     Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Fourth Atlanta Loan and refused to pay fees and penalties as specified in the Contract.

283.     The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Fourth Atlanta Loan and pay fees and penalties under the Contract is at least $231,840.73.

### 36.   The "Port Saint Lucie Loan"

284.   On or around October 15, 2007, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 7232) secured by a property in Port Saint Lucie, Florida (the "Port Saint Lucie Loan"). A copy of the portion of the Loan Purchase Schedule, dated October 15, 2007, reflecting Wells Fargo's purchase of the Port Saint Lucie Loan is attached hereto as Exhibit 37.

285.   The loan file for the Port Saint Lucie Loan contained misrepresentations regarding occupancy.

286.   The Port Saint Lucie Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Port Saint Lucie Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

287.   The property securing the Port Saint Lucie Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the Port Saint Lucie Loan.

288.   On or around August 19, 2010, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Port Saint Lucie Loan and/or indemnify Wells Fargo for its loss on the Port Saint Lucie Loan and to pay fees and penalties as specified in the Contract.

289.   Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Port Saint Lucie Loan and refused to pay fees and penalties as specified in the Contract.

290.    The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Port Saint Lucie Loan and pay fees and penalties under the Contract is at least $198,981.92.

### 37.    The "First Loganville Loan"

291.    On or around May 14, 2008, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 5373) secured by a property in Loganville, Georgia (the "First Loganville Loan").  A copy of the portion of the Loan Purchase Schedule, dated May 14, 2008, reflecting Wells Fargo's purchase of the First Loganville Loan is attached hereto as Exhibit 38.

292.    The appraised value for the property securing the First Loganville Loan was unsupported by the original appraisal report included in the loan file.

293.    The First Loganville Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the First Loganville Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

294.    The property securing the First Loganville Loan was sold to a third party at the foreclosure sale.  As a result of that process, Wells Fargo incurred a loss with respect to the First Loganville Loan.

295.    On or around September 7, 2010, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the First Loganville Loan and/or indemnify Wells Fargo for its loss on the First Loganville Loan and to pay fees and penalties as specified in the Contract.

296.     Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the First Loganville Loan and refused to pay fees and penalties as specified in the Contract.

297.     The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the First Loganville Loan and pay fees and penalties under the Contract is at least $320,734.65.

### 38.     The "Third Kissimmee Loan"

298.     On or around August 29, 2008, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 2239) secured by a property in Kissimmee, Florida (the "Third Kissimmee Loan").  A copy of the portion of the Loan Purchase Schedule, dated August 29, 2008, reflecting Wells Fargo's purchase of the Third Kissimmee Loan is attached hereto as Exhibit 39.

299.     The borrower's income was not supported in the loan file for the Third Kissimmee Loan.

300.     The Third Kissimmee Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Third Kissimmee Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

301.     The property securing the Third Kissimmee Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the Third Kissimmee Loan.

302.     On or around September 7, 2010, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to

repurchase the Third Kissimmee Loan and/or indemnify Wells Fargo for its loss on the

Third Kissimmee Loan and to pay fees and penalties as specified in the Contract.

303.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it

incurred on the Third Kissimmee Loan and refused to pay fees and penalties as specified

in the Contract.

304.    The amount that Terrace Mortgage currently owes to Wells Fargo to

indemnify Wells Fargo for its loss on the Third Kissimmee Loan and pay fees and

penalties under the Contract is at least $267,627.56.

### 39.    The "Second Tampa Loan"

305.    On or around October 5, 2007, Terrace Mortgage sold to Wells Fargo a

residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan

are 7265) secured by a property in Tampa, Florida (the "Second Tampa Loan").  A copy

of the portion of the Loan Purchase Schedule, dated October 5, 2007, reflecting Wells

Fargo's purchase of the Second Tampa Loan is attached hereto as Exhibit 40.

306.    The property securing the Second Tampa Loan had an undisclosed

mortgage.

307.    The Second Tampa Loan did not meet the requirements of the Seller Guide,

and Terrace Mortgage's sale of the Second Tampa Loan constituted a violation of Terrace

Mortgage's contractual representations and warranties to Wells Fargo.

308.    The property securing the Second Tampa Loan was sold through the short-

sale process.  As a result of that process, Wells Fargo incurred a loss with respect to the

Second Tampa Loan.

309.     On or around September 30, 2010, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Second Tampa Loan and/or indemnify Wells Fargo for its loss on the Second Tampa Loan and to pay fees and penalties as specified in the Contract.

310.     Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Second Tampa Loan and refused to pay fees and penalties as specified in the Contract.

311.     The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Second Tampa Loan and pay fees and penalties under the Contract is at least $71,683.07.

### 40.     The "Covington Loan"

312.     On or around December 31, 2007, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 8949) secured by a property in Covington, Georgia (the "Covington Loan").  A copy of the portion of the Loan Purchase Schedule, dated December 31, 2007, reflecting Wells Fargo's purchase of the Covington Loan is attached hereto as Exhibit 41.

313.     The loan file for the Covington Loan contained misrepresentations regarding the income and/or assets of the borrower for that loan.

314.     The Covington Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Covington Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

315.    The property securing the Covington Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the Covington Loan.

316.    On or around October 6, 2010, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Covington Loan and/or indemnify Wells Fargo for its loss on the Covington Loan and to pay fees and penalties as specified in the Contract.

317.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Covington Loan and refused to pay fees and penalties as specified in the Contract.

318.    The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Covington Loan and pay fees and penalties under the Contract is at least $66,639.58.

### 41.    The "Brentwood Loan"

319.    On or around June 7, 2006, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 3315) secured by a property in Brentwood, Tennessee (the "Brentwood Loan").  A copy of the portion of the Loan Purchase Schedule, dated June 7, 2006, reflecting Wells Fargo's purchase of the Brentwood Loan is attached hereto as Exhibit 42.

320.    The loan file for the Brentwood Loan contained misrepresentations regarding the income and/or assets of the borrower for that loan.

321.    The Brentwood Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Brentwood Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

322.    The property securing the Brentwood Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the Brentwood Loan.

323.    On or around October 6, 2010, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Brentwood Loan and/or indemnify Wells Fargo for its loss on the Brentwood Loan and to pay fees and penalties as specified in the Contract.

324.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Brentwood Loan and refused to pay fees and penalties as specified in the Contract.

325.    The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Brentwood Loan and pay fees and penalties under the Contract is at least $33,788.70.

### 42.    The "First Lilburn Loan"

326.    On or around May 19, 2008, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 1072) secured by a property in Lilburn, Georgia (the "First Lilburn Loan").  A copy of the portion of the Loan Purchase Schedule, dated May 19, 2008, reflecting Wells Fargo's purchase of the First Lilburn Loan is attached hereto as Exhibit 43.

327.    The appraised value for the property securing the First Lilburn Loan was unsupported by the original appraisal report included in the loan file.

328.    The First Lilburn Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the First Lilburn Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

329.    The property securing the First Lilburn Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the First Lilburn Loan.

330.    On or around October 6, 2010, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the First Lilburn Loan and/or indemnify Wells Fargo for its loss on the First Lilburn Loan and to pay fees and penalties as specified in the Contract.

331.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the First Lilburn Loan and refused to pay fees and penalties as specified in the Contract.

332.    The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the First Lilburn Loan and pay fees and penalties under the Contract is at least $39,975.57.

### 43.    The "First Conyers Loan"

333.    On or around May 16, 2008, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 9116) secured by a property in Conyers, Georgia (the "First Conyers Loan").  A copy

of the portion of the Loan Purchase Schedule, dated May 16, 2008, reflecting Wells Fargo's purchase of the First Conyers Loan is attached hereto as Exhibit 44.

334.    The appraised value for the property securing the First Conyers Loan was unsupported by the original appraisal report included in the loan file.

335.    The First Conyers Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the First Conyers Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

336.    The property securing the First Conyers Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the First Conyers Loan.

337.    On or around November 4, 2010, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the First Conyers Loan and/or indemnify Wells Fargo for its loss on the First Conyers Loan and to pay fees and penalties as specified in the Contract.

338.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the First Conyers Loan and refused to pay fees and penalties as specified in the Contract.

339.    The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the First Conyers Loan and pay fees and penalties under the Contract is at least $109,848.15.

### 44.     The "First Forest Park Loan"

340.     On or around July 19, 2007, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 1976) secured by a property in Forest Park, Georgia (the "First Forest Park Loan").  A copy of the portion of the Loan Purchase Schedule, dated July 19, 2007, reflecting Wells Fargo's purchase of the First Forest Park Loan is attached hereto as Exhibit 45.

341.     The loan file for the First Forest Park Loan contained misrepresentations regarding the income and/or assets of the borrower for that loan.

342.     Additionally, the appraised value for the property securing the First Forest Park Loan was unsupported by the original appraisal report included in the loan file.

343.     The First Forest Park Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the First Forest Park Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

344.     The property securing the First Forest Park Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the First Forest Park Loan.

345.     On or around November 4, 2010, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the First Forest Park Loan and/or indemnify Wells Fargo for its loss on the First Forest Park Loan and to pay fees and penalties as specified in the Contract.

346.     Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the First Forest Park Loan and refused to pay fees and penalties as specified in the Contract.

347.     The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the First Forest Park Loan and pay fees and penalties under the Contract is at least $83,603.14.

### 45.     The "First Alpharetta Loan"

348.     On or around July 25, 2005, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 6985) secured by a property in Alpharetta, Georgia (the "First Alpharetta Loan").  A copy of the portion of the Loan Purchase Schedule, dated July 25, 2005, reflecting Wells Fargo's purchase of the First Alpharetta Loan is attached hereto as Exhibit 46.

349.     The loan file for the First Alpharetta Loan contained inadequate documentation regarding the income and/or assets of the borrower for that loan.

350.     The First Alpharetta Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the First Alpharetta Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

351.     The property securing the First Alpharetta Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the First Alpharetta Loan.

352.     On or around November 4, 2010, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to

repurchase the First Alpharetta Loan and/or indemnify Wells Fargo for its loss on the First

Alpharetta Loan and to pay fees and penalties as specified in the Contract.

353.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it

incurred on the First Alpharetta Loan and refused to pay fees and penalties as specified in

the Contract.

354.    The amount that Terrace Mortgage currently owes to Wells Fargo to

indemnify Wells Fargo for its loss on the First Alpharetta Loan and pay fees and penalties

under the Contract is at least $84,660.32.

### 46.    The "Sugar Hill Loan"

355.    On or around July 12, 2007, Terrace Mortgage sold to Wells Fargo a

residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan

are 4271) secured by a property in Sugar Hill, Georgia (the "Sugar Hill Loan").  A copy of

the portion of the Loan Purchase Schedule, dated July 12, 2007, reflecting Wells Fargo's

purchase of the Sugar Hill Loan is attached hereto as Exhibit 47.

356.    The loan file for the Sugar Hill Loan had undisclosed obligations.

357.    The Sugar Hill Loan did not meet the requirements of the Seller Guide, and

Terrace Mortgage's sale of the Sugar Hill Loan constituted a violation of Terrace

Mortgage's contractual representations and warranties to Wells Fargo.

358.    The property securing the Sugar Hill Loan was sold through the REO

Process.  As a result of that process, Wells Fargo incurred a loss with respect to the Sugar

Hill Loan.

359.     On or around November 18, 2010, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Sugar Hill Loan and/or indemnify Wells Fargo for its loss on the Sugar Hill Loan and to pay fees and penalties as specified in the Contract.

360.     Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Sugar Hill Loan and refused to pay fees and penalties as specified in the Contract.

361.     The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Sugar Hill Loan and pay fees and penalties under the Contract is at least $65,673.59.

### 47.     The "Bay Saint Louis Loan"

362.     On or around March 12, 2007, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 9428) secured by a property in Bay Saint Louis, Mississippi (the "Bay Saint Louis Loan").  A copy of the portion of the Loan Purchase Schedule, dated March 12, 2007, reflecting Wells Fargo's purchase of the Bay Saint Louis Loan is attached hereto as Exhibit 48.

363.     The loan file for the Bay Saint Louis Loan was a high cost loan.

364.     The Bay Saint Louis Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Bay Saint Louis Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

365.    The property securing the Bay Saint Louis Loan went through the HAMP modification process.  As a result of that process, Wells Fargo incurred a loss with respect to the Bay Saint Louis Loan.

366.    On or around November 18, 2010, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Bay Saint Louis Loan and/or indemnify Wells Fargo for its loss on the Bay Saint Louis Loan and to pay fees and penalties as specified in the Contract.

367.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Bay Saint Louis Loan and refused to pay fees and penalties as specified in the Contract.

368.    The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Bay Saint Louis Loan and pay fees and penalties under the Contract is at least $16,063.06.

## 48.    The "Second Stone Mountain Loan"

369.    On or around July 6, 2006, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 7402) secured by a property in Stone Mountain, Georgia (the "Second Stone Mountain Loan").  A copy of the portion of the Loan Purchase Schedule, dated July 6, 2006, reflecting Wells Fargo's purchase of the Second Stone Mountain Loan is attached hereto as Exhibit 49.

370.    The appraised value for the property securing the Second Stone Mountain Loan was unsupported by the original appraisal report included in the loan file.

371.    The Second Stone Mountain Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Second Stone Mountain Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

372.    The property securing the Second Stone Mountain Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the Second Stone Mountain Loan.

373.    On or around December 6, 2010, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Second Stone Mountain Loan and/or indemnify Wells Fargo for its loss on the Second Stone Mountain Loan and to pay fees and penalties as specified in the Contract.

374.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Second Stone Mountain Loan and refused to pay fees and penalties as specified in the Contract.

375.    The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Second Stone Mountain Loan and pay fees and penalties under the Contract is at least $120,160.76.

### 49.    The "Ashville Loan"

376.    On or around November 2, 2006, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 7796) secured by a property in Ashville, North Carolina (the "Ashville Loan").  A

copy of the portion of the Loan Purchase Schedule, dated November 2, 2006, reflecting

Wells Fargo's purchase of the Ashville Loan is attached hereto as Exhibit 50.

377.    The loan file for the Ashville Loan contained misrepresentations regarding

the income and/or assets of the borrower for that loan.

378.    The Ashville Loan did not meet the requirements of the Seller Guide, and

Terrace Mortgage's sale of the Ashville Loan constituted a violation of Terrace

Mortgage's contractual representations and warranties to Wells Fargo.

379.    The property securing the Ashville Loan was sold through the REO

Process.  As a result of that process, Wells Fargo incurred a loss with respect to the

Ashville Loan.

380.    On or around December 6, 2010, Wells Fargo sent an invoice to Terrace

Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to

repurchase the Ashville Loan and/or indemnify Wells Fargo for its loss on the Ashville

Loan and to pay fees and penalties as specified in the Contract.

381.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it

incurred on the Ashville Loan and refused to pay fees and penalties as specified in the

Contract.

382.    The amount that Terrace Mortgage currently owes to Wells Fargo to

indemnify Wells Fargo for its loss on the Ashville Loan and pay fees and penalties under

the Contract is at least $48,272.79.

### 50.   The "Fifth Atlanta Loan"

383.   On or around October 30, 2007, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 9629) secured by a property in Fifth Atlanta, North Carolina (the "Fifth Atlanta Loan").  A copy of the portion of the Loan Purchase Schedule, dated October 30, 2007, reflecting Wells Fargo's purchase of the Fifth Atlanta Loan is attached hereto as Exhibit 51.

384.   The appraised value for the property securing the Fifth Atlanta Loan was unsupported by the original appraisal report included in the loan file.

385.   The Fifth Atlanta Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Fifth Atlanta Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

386.   The property securing the Fifth Atlanta Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the Fifth Atlanta Loan.

387.   On or around December 20, 2010, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Fifth Atlanta Loan and/or indemnify Wells Fargo for its loss on the Fifth Atlanta Loan and to pay fees and penalties as specified in the Contract.

388.   Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Fifth Atlanta Loan and refused to pay fees and penalties as specified in the Contract.

389.     The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Fifth Atlanta Loan and pay fees and penalties under the Contract is at least $333,831.83.

### 51.     The "First Lawrenceville Loan"

390.     On or around April 4, 2008, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 9389) secured by a property in Lawrenceville, Georgia (the "First Lawrenceville Loan").  A copy of the portion of the Loan Purchase Schedule, dated April 4, 2008, reflecting Wells Fargo's purchase of the First Lawrenceville Loan is attached hereto as Exhibit 52.

391.     The loan file for the First Lawrenceville Loan contained misrepresentations regarding the borrower's employment and income.

392.     The First Lawrenceville Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the First Lawrenceville Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

393.     The property securing the First Lawrenceville Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the First Lawrenceville Loan.

394.     On or around January 6, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to

repurchase the First Lawrenceville Loan and/or indemnify Wells Fargo for its loss on the First Lawrenceville Loan and to pay fees and penalties as specified in the Contract.

395.     Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the First Lawrenceville Loan and refused to pay fees and penalties as specified in the Contract.

396.     The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the First Lawrenceville Loan and pay fees and penalties under the Contract is at least $46,140.60.

### 52.     The "Miramar Beach Loan"

397.     On or around April 13, 2007, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 0683) secured by a property in Miramar Beach, Florida (the "Miramar Beach Loan"). A copy of the portion of the Loan Purchase Schedule, dated April 12, 2007, reflecting Wells Fargo's purchase of the Miramar Beach Loan is attached hereto as Exhibit 53.

398.     The loan file for the Miramar Beach Loan was missing documentation regarding the income and/or assets of the borrower for that loan.

399.     The Miramar Beach Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Miramar Beach Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

400.     The property securing the Miramar Beach Loan was sold through the short sale process.  As a result of that process, Wells Fargo incurred a loss with respect to the Miramar Beach Loan.

401.    On or around January 20, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Miramar Beach Loan and/or indemnify Wells Fargo for its loss on the Miramar Beach Loan and to pay fees and penalties as specified in the Contract.

402.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Miramar Beach Loan and refused to pay fees and penalties as specified in the Contract.

403.    The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Miramar Beach Loan and pay fees and penalties under the Contract is at least $163,215.51.

### 53.    The "Sixth Atlanta Loan"

404.    On or around August 14, 2007, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 1286) secured by a property in Atlanta, Georgia (the "Sixth Atlanta Loan").  A copy of the portion of the Loan Purchase Schedule, dated August 14, 2007, reflecting Wells Fargo's purchase of the Sixth Atlanta Loan is attached hereto as Exhibit 54.

405.    The appraised value for the property securing the Sixth Atlanta Loan was unsupported by the original appraisal report included in the loan file.

406.    The Sixth Atlanta Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Sixth Atlanta Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

407.    The property securing the Sixth Atlanta Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the Sixth Atlanta Loan.

408.    On or around January 20, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Sixth Atlanta Loan and/or indemnify Wells Fargo for its loss on the Sixth Atlanta Loan and to pay fees and penalties as specified in the Contract.

409.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Sixth Atlanta Loan and refused to pay fees and penalties as specified in the Contract.

410.    The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Sixth Atlanta Loan and pay fees and penalties under the Contract is at least $387,653.49.

### 54.    The "College Park Loan"

411.    On or around July 6, 2007, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 8786) secured by a property in College Park, Georgia (the "College Park Loan").  A copy of the portion of the Loan Purchase Schedule, dated July 6, 2007, reflecting Wells Fargo's purchase of the College Park Loan is attached hereto as Exhibit 55.

412.    The appraised value for the property securing the College Park Loan was unsupported by the original appraisal report included in the loan file.

413.     The College Park Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the College Park Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

414.     The property securing the College Park Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the College Park Loan.

415.     On or around February 7, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the College Park Loan and/or indemnify Wells Fargo for its loss on the College Park Loan and to pay fees and penalties as specified in the Contract.

416.     Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the College Park Loan and refused to pay fees and penalties as specified in the Contract.

417.     The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the College Park Loan and pay fees and penalties under the Contract is at least $73,874.80.

## 55.     The "Second Forest Park Loan"

418.     On or around September 21, 2007, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 3199) secured by a property in Forest Park, Georgia (the "Second Forest Park Loan"). A copy of the portion of the Loan Purchase Schedule, dated September 21, 2007,

reflecting Wells Fargo's purchase of the Second Forest Park Loan is attached hereto as Exhibit 56.

419.     The appraised value for the property securing the Second Forest Park Loan was unsupported by the original appraisal report included in the loan file.

420.     The Second Forest Park Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Second Forest Park Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

421.     The property securing the Second Forest Park Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the Second Forest Park Loan.

422.     On or around February 7, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Second Forest Park Loan and/or indemnify Wells Fargo for its loss on the Second Forest Park Loan and to pay fees and penalties as specified in the Contract.

423.     Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Second Forest Park Loan and refused to pay fees and penalties as specified in the Contract.

424.     The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Second Forest Park Loan and pay fees and penalties under the Contract is at least $73,404.09.

### 56.     The "Seventh Atlanta Loan"

425.     On or around June 4, 2008, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 7893) secured by a property in Atlanta, Georgia (the "Seventh Atlanta Loan").  A copy of the portion of the Loan Purchase Schedule, dated June 4, 2008, reflecting Wells Fargo's purchase of the Seventh Atlanta Loan is attached hereto as Exhibit 57.

426.     The loan file for the Seventh Atlanta Loan contained misrepresentations regarding the employment of the borrower for that loan.

427.     The Seventh Atlanta Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Seventh Atlanta Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

428.     The property securing the Seventh Atlanta Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the Seventh Atlanta Loan.

429.     On or around February 7, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Seventh Atlanta Loan and/or indemnify Wells Fargo for its loss on the Seventh Atlanta Loan and to pay fees and penalties as specified in the Contract.

430.     Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Seventh Atlanta Loan and refused to pay fees and penalties as specified in the Contract.

431.     The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Seventh Atlanta Loan and pay fees and penalties under the Contract is at least $144,855.62.

### 57.     The "Third Stone Mountain Loan"

432.     On or around February 27, 2006, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 0506) secured by a property in Stone Mountain, Georgia (the "Third Stone Mountain Loan").  A copy of the portion of the Loan Purchase Schedule, dated February 27, 2006, reflecting Wells Fargo's purchase of the Third Stone Mountain Loan is attached hereto as Exhibit 58.

433.     The appraised value for the property securing the Third Stone Mountain Loan was unsupported by the original appraisal report included in the loan file.

434.     The Third Stone Mountain Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Third Stone Mountain Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

435.     The property securing the Third Stone Mountain Loan completed the HAMP modification process.  As a result of that process, Wells Fargo incurred a loss with respect to the Third Stone Mountain Loan.

436.     On or around February 21, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to

repurchase the Third Stone Mountain Loan and/or indemnify Wells Fargo for its loss on the Third Stone Mountain Loan and to pay fees and penalties as specified in the Contract.

437.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Third Stone Mountain Loan and refused to pay fees and penalties as specified in the Contract.

438.    The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Third Stone Mountain Loan and pay fees and penalties under the Contract is at least $52,224.01.

### 58.    The "First Decatur Loan"

439.    On or around June 26, 2008, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 8893) secured by a property in Decatur, Georgia (the "First Decatur Loan").  A copy of the portion of the Loan Purchase Schedule, dated June 26, 2008, reflecting Wells Fargo's purchase of the First Decatur Loan is attached hereto as Exhibit 59.

440.    The loan file for the First Decatur Loan contained undisclosed mortgages and obligations.

441.    The First Decatur Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the First Decatur Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

442.    The property securing the First Decatur Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the First Decatur Loan.

443.    On or around March 4, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the First Decatur Loan and/or indemnify Wells Fargo for its loss on the First Decatur Loan and to pay fees and penalties as specified in the Contract.

444.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the First Decatur Loan and refused to pay fees and penalties as specified in the Contract.

445.    The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the First Decatur Loan and pay fees and penalties under the Contract is at least $113,025.82.

### 59.    The "Second Lawrenceville Loan"

446.    On or around October 17, 2007, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 9787) secured by a property in Lawrenceville, Georgia (the "Second Lawrenceville Loan").  A copy of the portion of the Loan Purchase Schedule, dated October 17, 2007, reflecting Wells Fargo's purchase of the Second Lawrenceville Loan is attached hereto as Exhibit 60.

447.    The loan file for the Second Lawrenceville Loan was missing required documentation.

448.    The Second Lawrenceville Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Second Lawrenceville Loan constituted a

violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

449.    The property securing the Second Lawrenceville Loan was sold through the short-sale process.  As a result of that process, Wells Fargo incurred a loss with respect to the Second Lawrenceville Loan.

450.    On or around March 4, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Second Lawrenceville Loan and/or indemnify Wells Fargo for its loss on the Second Lawrenceville Loan and to pay fees and penalties as specified in the Contract.

451.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Second Lawrenceville Loan and refused to pay fees and penalties as specified in the Contract.

452.    The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Second Lawrenceville Loan and pay fees and penalties under the Contract is at least $77,642.22.

### 60.    The "Second Douglasville Loan"

453.    On or around May 28, 2008, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 5523) secured by a property in Douglasville, Georgia (the "Second Douglasville Loan").  A copy of the portion of the Loan Purchase Schedule, dated May 28, 2008, reflecting Wells Fargo's purchase of the Second Douglasville Loan is attached hereto as Exhibit 61.

454.    The loan file for the Second Douglasville Loan contained misrepresentations regarding the income and/or assets of the borrower for that loan.

455.    The Second Douglasville Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Second Douglasville Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

456.    The property securing the Second Douglasville Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the Second Douglasville Loan.

457.    On or around March 18, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Second Douglasville Loan and/or indemnify Wells Fargo for its loss on the Second Douglasville Loan and to pay fees and penalties as specified in the Contract.

458.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Second Douglasville Loan and refused to pay fees and penalties as specified in the Contract.

459.    The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Second Douglasville Loan and pay fees and penalties under the Contract is at least $112,575.01.

### 61.    The "Fourth Buford Loan"

460.    On or around February 15, 2008, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan

are 6927) secured by a property in Buford, Georgia (the "Fourth Buford Loan"). A copy of the portion of the Loan Purchase Schedule, dated February 14, 2008, reflecting Wells Fargo's purchase of the Fourth Buford Loan is attached hereto as Exhibit 62.

461.    The loan file for the Fourth Buford Loan contained misrepresentations regarding the occupancy of the borrower for that loan.

462.    The Fourth Buford Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Fourth Buford Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

463.    The property securing the Fourth Buford Loan was sold through the REO Process. As a result of that process, Wells Fargo incurred a loss with respect to the Fourth Buford Loan.

464.    On or around April 6, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Fourth Buford Loan and/or indemnify Wells Fargo for its loss on the Fourth Buford Loan and to pay fees and penalties as specified in the Contract.

465.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Fourth Buford Loan and refused to pay fees and penalties as specified in the Contract.

466.    The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Fourth Buford Loan and pay fees and penalties under the Contract is at least $147,221.13.

### 62.    The "Third Lawrenceville Loan"

467.    On or around March 20, 2007, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 2514) secured by a property in Lawrenceville, Georgia (the "Third Lawrenceville Loan").  A copy of the portion of the Loan Purchase Schedule, dated March 20, 2007, reflecting Wells Fargo's purchase of the Third Lawrenceville Loan is attached hereto as Exhibit 63.

468.    The loan file for the Third Lawrenceville Loan was missing gift fund documentation.

469.    The Third Lawrenceville Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Third Lawrenceville Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

470.    The property securing the Third Lawrenceville Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the Third Lawrenceville Loan.

471.    On or around June 6, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Third Lawrenceville Loan and/or indemnify Wells Fargo for its loss on the Third Lawrenceville Loan and to pay fees and penalties as specified in the Contract.

472.     Terrace Mortgage refused to indemnify Wells Fargo for the loss that it

incurred on the Third Lawrenceville Loan and refused to pay fees and penalties as

specified in the Contract.

473.     The amount that Terrace Mortgage currently owes to Wells Fargo to

indemnify Wells Fargo for its loss on the Third Lawrenceville Loan and pay fees and

penalties under the Contract is at least $38,976.95.

### 63.     The "Second Duluth Loan"

474.     On or around May 12, 2008, Terrace Mortgage sold to Wells Fargo a

residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan

are 3751) secured by a property in Duluth, Georgia (the "Second Duluth Loan").  A copy

of the portion of the Loan Purchase Schedule, dated May 12, 2008, reflecting Wells

Fargo's purchase of the Second Duluth Loan is attached hereto as Exhibit 64.

475.     The loan file for the Second Duluth Loan contained misrepresentations

regarding the income and/or assets of the borrower for that loan.

476.     The Second Duluth Loan did not meet the requirements of the Seller Guide,

and Terrace Mortgage's sale of the Second Duluth Loan constituted a violation of Terrace

Mortgage's contractual representations and warranties to Wells Fargo.

477.     The property securing the Second Duluth Loan was sold through the REO

Process.  As a result of that process, Wells Fargo incurred a loss with respect to the

Second Duluth Loan.

478.     On or around June 20, 2011, Wells Fargo sent an invoice to Terrace

Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to

repurchase the Second Duluth Loan and/or indemnify Wells Fargo for its loss on the

Second Duluth Loan and to pay fees and penalties as specified in the Contract.

479.     Terrace Mortgage refused to indemnify Wells Fargo for the loss that it

incurred on the Second Duluth Loan and refused to pay fees and penalties as specified in

the Contract.

480.     The amount that Terrace Mortgage currently owes to Wells Fargo to

indemnify Wells Fargo for its loss on the Second Duluth Loan and pay fees and penalties

under the Contract is at least $178,395.17.

### 64.     The "Chicago Loan"

481.     On or around May 19, 2008, Terrace Mortgage sold to Wells Fargo a

residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan

are 8845) secured by a property in Chicago, Illinois (the "Chicago Loan").  A copy of the

portion of the Loan Purchase Schedule, dated May 19, 2008, reflecting Wells Fargo's

purchase of the Chicago Loan is attached hereto as Exhibit 65.

482.     The appraised value for the property securing the Chicago Loan was

unsupported by the original appraisal report included in the loan file.

483.     The Chicago Loan did not meet the requirements of the Seller Guide, and

Terrace Mortgage's sale of the Chicago Loan constituted a violation of Terrace

Mortgage's contractual representations and warranties to Wells Fargo.

484.     The property value was too low to sell through the REO process and had to

be charged off.  As a result of that process, Wells Fargo incurred a loss with respect to the

Chicago Loan.

485.     On or around June 20, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Chicago Loan and/or indemnify Wells Fargo for its loss on the Chicago Loan and to pay fees and penalties as specified in the Contract.

486.     Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Chicago Loan and refused to pay fees and penalties as specified in the Contract.

487.     The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Chicago Loan and pay fees and penalties under the Contract is at least $229,505.28.

### 65.     The "Woodstock Loan"

488.     On or around November 28, 2008, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 1275) secured by a property in Woodstock, Georgia (the "Woodstock Loan").  A copy of the portion of the Loan Purchase Schedule, dated November 28, 2008, reflecting Wells Fargo's purchase of the Woodstock Loan is attached hereto as Exhibit 66.

489.     The appraised value for the property securing the Woodstock Loan was unsupported by the original appraisal report included in the loan file.

490.     The Woodstock Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Woodstock Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

491.     The property securing the Woodstock Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the Woodstock Loan.

492.     On or around July 7, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Woodstock Loan and/or indemnify Wells Fargo for its loss on the Woodstock Loan and to pay fees and penalties as specified in the Contract.

493.     Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Woodstock Loan and refused to pay fees and penalties as specified in the Contract.

494.     The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Woodstock Loan and pay fees and penalties under the Contract is at least $142,470.52.

## 66.     The "Second Fayetteville Loan"

495.     On or around August 6, 2008, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 9832) secured by a property in Fayetteville, Georgia (the "Second Fayetteville Loan"). A copy of the portion of the Loan Purchase Schedule, dated August 6, 2008, reflecting Wells Fargo's purchase of the Second Fayetteville Loan is attached hereto as Exhibit 67.

496.     The appraised value for the property securing the Second Fayetteville Loan was unsupported by the original appraisal report included in the loan file.

497.    The Second Fayetteville Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Second Fayetteville Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

498.    The property securing the Second Fayetteville Loan was sold to an alternate investor.  As a result of that process, Wells Fargo incurred a loss with respect to the Second Fayetteville Loan.

499.    On or around July 7, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Second Fayetteville Loan and/or indemnify Wells Fargo for its loss on the Second Fayetteville Loan and to pay fees and penalties as specified in the Contract.

500.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Second Fayetteville Loan and refused to pay fees and penalties as specified in the Contract.

501.    The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Second Fayetteville Loan and pay fees and penalties under the Contract is at least $206,395.62.

### 67.    The "Fourth Lawrenceville Loan"

502.    On or around April 16, 2008, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 6661) secured by a property in Lawrenceville, Georgia (the "Fourth Lawrenceville Loan").  A copy of the portion of the Loan Purchase Schedule, dated April 16, 2008,

reflecting Wells Fargo's purchase of the Fourth Lawrenceville Loan is attached hereto as Exhibit 68.

503.    The loan file for the Fourth Lawrenceville Loan contained misrepresentations regarding the employment of the borrower for that loan.

504.    The Fourth Lawrenceville Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Fourth Lawrenceville Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

505.    The property securing the Fourth Lawrenceville Loan was sold through the short-sale process.  As a result of that process, Wells Fargo incurred a loss with respect to the Fourth Lawrenceville Loan.

506.    On or around July 21, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Fourth Lawrenceville Loan and/or indemnify Wells Fargo for its loss on the Fourth Lawrenceville Loan and to pay fees and penalties as specified in the Contract.

507.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Fourth Lawrenceville Loan and refused to pay fees and penalties as specified in the Contract.

508.    The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Fourth Lawrenceville Loan and pay fees and penalties under the Contract is at least $153,151.33.

### 68.      The "Third Lithonia Loan"

509.      On or around February 6, 2007, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 6832) secured by a property in Lithonia, Georgia (the "Third Lithonia Loan").  A copy of the portion of the Loan Purchase Schedule, dated February 6, 2007, reflecting Wells Fargo's purchase of the Third Lithonia Loan is attached hereto as Exhibit 69.

510.      The loan file for the Third Lithonia Loan contained an undisclosed debt.

511.      The Third Lithonia Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Third Lithonia Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

512.      The property securing the Third Lithonia Loan was sold through the short-sale process.  As a result of that process, Wells Fargo incurred a loss with respect to the Third Lithonia Loan.

513.      On or around July 21, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Third Lithonia Loan and/or indemnify Wells Fargo for its loss on the Third Lithonia Loan and to pay fees and penalties as specified in the Contract.

514.      Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Third Lithonia Loan and refused to pay fees and penalties as specified in the Contract.

515.     The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Third Lithonia Loan and pay fees and penalties under the Contract is at least $74,649.21.

### 69.     The "Second Alpharetta Loan"

516.     On or around August 1, 2006, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 4452) secured by a property in Alpharetta, Georgia (the "Second Alpharetta Loan"). A copy of the portion of the Loan Purchase Schedule, dated August 1, 2006, reflecting Wells Fargo's purchase of the Second Alpharetta Loan is attached hereto as Exhibit 70.

517.     The loan file for the Second Alpharetta Loan contained misrepresentations regarding the income and/or assets of the borrower for that loan.

518.     The Second Alpharetta Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Second Alpharetta Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

519.     The property securing the Second Alpharetta Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the Second Alpharetta Loan.

520.     On or around August 18, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Second Alpharetta Loan and/or indemnify Wells Fargo for its loss on the Second Alpharetta Loan and to pay fees and penalties as specified in the Contract.

521.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Second Alpharetta Loan and refused to pay fees and penalties as specified in the Contract.

522.    The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Second Alpharetta Loan and pay fees and penalties under the Contract is at least $41,625.44.

### 70.    The "Third Duluth Loan"

523.    On or around May 9, 2006, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 8056) secured by a property in Duluth, Georgia (the "Third Duluth Loan").  A copy of the portion of the Loan Purchase Schedule, dated May 9, 2006, reflecting Wells Fargo's purchase of the Third Duluth Loan is attached hereto as Exhibit 71.

524.    The loan file for the Third Duluth Loan contained undisclosed obligations.

525.    The Third Duluth Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Third Duluth Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

526.    The property securing the Third Duluth Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the Third Duluth Loan.

527.    On or around September 7, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to

repurchase the Third Duluth Loan and/or indemnify Wells Fargo for its loss on the Third

Duluth Loan and to pay fees and penalties as specified in the Contract.

528.     Terrace Mortgage refused to indemnify Wells Fargo for the loss that it

incurred on the Third Duluth Loan and refused to pay fees and penalties as specified in the

Contract.

529.     The amount that Terrace Mortgage currently owes to Wells Fargo to

indemnify Wells Fargo for its loss on the Third Duluth Loan and pay fees and penalties

under the Contract is at least $61,103.33.

### 71.     The "Fourth Duluth Loan"

530.     On or around March 22, 2006, Terrace Mortgage sold to Wells Fargo a

residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan

are 9494) secured by a property in Duluth, Georgia (the "Fourth Duluth Loan").  A copy

of the portion of the Loan Purchase Schedule, dated March 22, 2006, reflecting Wells

Fargo's purchase of the Fourth Duluth Loan is attached hereto as Exhibit 72.

531.     The loan file for the Fourth Duluth Loan contained misrepresentations

regarding the income and/or assets of the borrower for that loan.

532.     Additionally, the mortgage insurance for the property securing the Fourth

Duluth Loan was rescinded.

533.     The Fourth Duluth Loan did not meet the requirements of the Seller Guide,

and Terrace Mortgage's sale of the Fourth Duluth Loan constituted a violation of Terrace

Mortgage's contractual representations and warranties to Wells Fargo.

534.    The property securing the Fourth Duluth Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the Fourth Duluth Loan.

535.    On or around September 7, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Fourth Duluth Loan and/or indemnify Wells Fargo for its loss on the Fourth Duluth Loan and to pay fees and penalties as specified in the Contract.

536.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Fourth Duluth Loan and refused to pay fees and penalties as specified in the Contract.

537.    The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Fourth Duluth Loan and pay fees and penalties under the Contract is at least $91,260.23.

### 72.    The "Second Dallas Loan"

538.    On or around September 6, 2007, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 6714) secured by a property in Dallas, Georgia (the "Second Dallas Loan").  A copy of the portion of the Loan Purchase Schedule, dated September 6, 2007, reflecting Wells Fargo's purchase of the Second Dallas Loan is attached hereto as Exhibit 73.

539.    The appraised value for the property securing the Second Dallas Loan was unsupported by the original appraisal report included in the loan file.

540.     The Second Dallas Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Second Dallas Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

541.     The property securing the Second Dallas Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the Second Dallas Loan.

542.     On or around September 21, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Second Dallas Loan and/or indemnify Wells Fargo for its loss on the Second Dallas Loan and to pay fees and penalties as specified in the Contract.

543.     Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Second Dallas Loan and refused to pay fees and penalties as specified in the Contract.

544.     The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Second Dallas Loan and pay fees and penalties under the Contract is at least $49,532.20.

### 73.     The "Eighth Atlanta Loan"

545.     On or around May 30, 2008, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 8845) secured by a property in Atlanta, Georgia (the "Eighth Atlanta Loan").  A copy of the portion of the Loan Purchase Schedule, dated May 30, 2008, reflecting Wells Fargo's purchase of the Eighth Atlanta Loan is attached hereto as Exhibit 74.

546.     The loan file for the Eighth Atlanta Loan contained an undisclosed mortgage.

547.     The Eighth Atlanta Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Eighth Atlanta Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

548.     The property securing the Eighth Atlanta Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the Eighth Atlanta Loan.

549.     On or around September 21, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Eighth Atlanta Loan and/or indemnify Wells Fargo for its loss on the Eighth Atlanta Loan and to pay fees and penalties as specified in the Contract.

550.     Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Eighth Atlanta Loan and refused to pay fees and penalties as specified in the Contract.

551.     The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Eighth Atlanta Loan and pay fees and penalties under the Contract is at least $309,953.04.

### 74.     The "Riverview Loan"

552.     On or around October 23, 2007, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 0622) secured by a property in Riverview, Florida (the "Riverview Loan").  A copy of

the portion of the Loan Purchase Schedule, dated October 23, 2007, reflecting Wells

Fargo's purchase of the Riverview Loan is attached hereto as Exhibit 75.

553.    The loan file for the Riverview Loan contained misrepresentations

regarding the occupancy of the borrower for that loan.

554.    Additionally, the loan file for the Riverview Loan contained an undisclosed

mortgage

555.    The Riverview Loan did not meet the requirements of the Seller Guide, and

Terrace Mortgage's sale of the Riverview Loan constituted a violation of Terrace

Mortgage's contractual representations and warranties to Wells Fargo.

556.    The property securing the Riverview Loan was sold through the REO

Process.  As a result of that process, Wells Fargo incurred a loss with respect to the

Riverview Loan.

557.    On or around September 21, 2011, Wells Fargo sent an invoice to Terrace

Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to

repurchase the Riverview Loan and/or indemnify Wells Fargo for its loss on the

Riverview Loan and to pay fees and penalties as specified in the Contract.

558.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it

incurred on the Riverview Loan and refused to pay fees and penalties as specified in the

Contract.

559.    The amount that Terrace Mortgage currently owes to Wells Fargo to

indemnify Wells Fargo for its loss on the Riverview Loan and pay fees and penalties

under the Contract is at least $124,721.56.

### 75.    The "First Suwanee Loan"

560.    On or around August 16, 2007, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 4916) secured by a property in Suwanee, Florida (the "First Suwanee Loan").  A copy of the portion of the Loan Purchase Schedule, dated August 16, 2007, reflecting Wells Fargo's purchase of the First Suwanee Loan is attached hereto as Exhibit 76.

561.    The mortgage insurance on the property securing the First Suwanee Loan was rescinded.

562.    The First Suwanee Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the First Suwanee Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

563.    The property securing the First Suwanee Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the First Suwanee Loan.

564.    On or around October 6, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the First Suwanee Loan and/or indemnify Wells Fargo for its loss on the First Suwanee Loan and to pay fees and penalties as specified in the Contract.

565.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the First Suwanee Loan and refused to pay fees and penalties as specified in the Contract.

566.    The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the First Suwanee Loan and pay fees and penalties under the Contract is at least $94,718.61.

### 76.    The "Fifth Duluth Loan"

567.    On or around May 21, 2008, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 3216) secured by a property in Duluth, Georgia (the "Fifth Duluth Loan").  A copy of the portion of the Loan Purchase Schedule, dated May 21, 2008, reflecting Wells Fargo's purchase of the Fifth Duluth Loan is attached hereto as Exhibit 77.

568.    The mortgage insurance on the property securing the Fifth Duluth Loan was rescinded.

569.    The Fifth Duluth Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Fifth Duluth Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

570.    The property securing the Fifth Duluth Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the Fifth Duluth Loan.

571.    On or around October 6, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Fifth Duluth Loan and/or indemnify Wells Fargo for its loss on the Fifth Duluth Loan and to pay fees and penalties as specified in the Contract.

572.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Fifth Duluth Loan and refused to pay fees and penalties as specified in the Contract.

573.    The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Fifth Duluth Loan and pay fees and penalties under the Contract is at least $58,084.33.

## 77.    The "Sixth Duluth Loan"

574.    On or around May 1, 2006, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 6267) secured by a property in Duluth, Georgia (the "Sixth Duluth Loan").  A copy of the portion of the Loan Purchase Schedule, dated May 1, 2006, reflecting Wells Fargo's purchase of the Sixth Duluth Loan is attached hereto as Exhibit 78.

575.    The mortgage insurance on the property securing the Sixth Duluth Loan was rescinded.

576.    The Sixth Duluth Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Sixth Duluth Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

577.    The property securing the Sixth Duluth Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the Sixth Duluth Loan.

578.    On or around October 6, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to

repurchase the Sixth Duluth Loan and/or indemnify Wells Fargo for its loss on the Sixth

Duluth Loan and to pay fees and penalties as specified in the Contract.

579.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it

incurred on the Sixth Duluth Loan and refused to pay fees and penalties as specified in the

Contract.

580.    The amount that Terrace Mortgage currently owes to Wells Fargo to

indemnify Wells Fargo for its loss on the Sixth Duluth Loan and pay fees and penalties

under the Contract is at least $152,187.97.

### 78.    The "Second Cape Coral Loan"

581.    On or around September 25, 2008, Terrace Mortgage sold to Wells Fargo a

residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan

are 6239) secured by a property in Cape Coral, Florida (the "Second Cape Coral Loan").

A copy of the portion of the Loan Purchase Schedule, dated September 25, 2008,

reflecting Wells Fargo's purchase of the Second Cape Coral Loan is attached hereto as

Exhibit 79.

582.    The mortgage insurance on the property securing the Second Cape Coral

Loan was rescinded.

583.    The Second Cape Coral Loan did not meet the requirements of the Seller

Guide, and Terrace Mortgage's sale of the Second Cape Coral Loan constituted a violation

of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

584.     The property securing the Second Cape Coral Loan was sold through the short-sale process.  As a result of that process, Wells Fargo incurred a loss with respect to the Second Cape Coral Loan.

585.     On or around October 6, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Second Cape Coral Loan and/or indemnify Wells Fargo for its loss on the Second Cape Coral Loan and to pay fees and penalties as specified in the Contract.

586.     Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Second Cape Coral Loan and refused to pay fees and penalties as specified in the Contract.

587.     The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Second Cape Coral Loan and pay fees and penalties under the Contract is at least $143,818.46.

**79.     The "Roswell Loan"**

588.     On or around October 3, 2007, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 1822) secured by a property in Roswell, Georgia (the "Roswell Loan").  A copy of the portion of the Loan Purchase Schedule, dated October 3, 2007, reflecting Wells Fargo's purchase of the Roswell Loan is attached hereto as Exhibit 80.

589.     The mortgage insurance on the property securing the Roswell Loan was rescinded.

590.    The Roswell Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Roswell Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

591.    The property securing the Roswell Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the Roswell Loan.

592.    On or around October 6, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Roswell Loan and/or indemnify Wells Fargo for its loss on the Roswell Loan and to pay fees and penalties as specified in the Contract.

593.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Roswell Loan and refused to pay fees and penalties as specified in the Contract.

594.    The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Roswell Loan and pay fees and penalties under the Contract is at least $308,719.16.

## 80.    The "Fifth Buford Loan"

595.    On or around August 6, 2007, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 8678) secured by a property in Buford, Georgia (the "Fifth Buford Loan").  A copy of the portion of the Loan Purchase Schedule, dated August 6, 2007, reflecting Wells Fargo's purchase of the Fifth Buford Loan is attached hereto as Exhibit 81.

596.     The mortgage insurance on the property securing the Fifth Buford Loan was rescinded.

597.     The Fifth Buford Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Fifth Buford Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

598.     The property securing the Fifth Buford Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the Fifth Buford Loan.

599.     On or around October 6, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Fifth Buford Loan and/or indemnify Wells Fargo for its loss on the Fifth Buford Loan and to pay fees and penalties as specified in the Contract.

600.     Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Fifth Buford Loan and refused to pay fees and penalties as specified in the Contract.

601.     The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Fifth Buford Loan and pay fees and penalties under the Contract is at least $114,686.28.

### 81.     The "Fairburn Loan"

602.     On or around December 27, 2007, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 2428) secured by a property in Fairburn, Georgia (the "Fairburn Loan").  A copy of

the portion of the Loan Purchase Schedule, dated December 27, 2007, reflecting Wells

Fargo's purchase of the Fairburn Loan is attached hereto as Exhibit 82.

603.     The mortgage insurance on the property securing the Fairburn Loan was

rescinded.

604.     The Fairburn Loan did not meet the requirements of the Seller Guide, and

Terrace Mortgage's sale of the Fairburn Loan constituted a violation of Terrace

Mortgage's contractual representations and warranties to Wells Fargo.

605.     The property securing the Fairburn Loan was sold through the REO

Process.  As a result of that process, Wells Fargo incurred a loss with respect to the

Fairburn Loan.

606.     On or around October 6, 2011, Wells Fargo sent an invoice to Terrace

Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to

repurchase the Fairburn Loan and/or indemnify Wells Fargo for its loss on the Fairburn

Loan and to pay fees and penalties as specified in the Contract.

607.     Terrace Mortgage refused to indemnify Wells Fargo for the loss that it

incurred on the Fairburn Loan and refused to pay fees and penalties as specified in the

Contract.

608.     The amount that Terrace Mortgage currently owes to Wells Fargo to

indemnify Wells Fargo for its loss on the Fairburn Loan and pay fees and penalties under

the Contract is at least $311,200.91.

### 82.   The "Sixth Buford Loan"

609.   On or around September 7, 2005, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 0914) secured by a property in Buford, Georgia (the "Sixth Buford Loan").  A copy of the portion of the Loan Purchase Schedule, dated September 7, 2005, reflecting Wells Fargo's purchase of the Fairburn Loan is attached hereto as Exhibit 83.

610.   The loan file for the Fairburn Loan contained misrepresentations regarding the income and/or assets of the borrower for that loan.

611.   The Sixth Buford Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Sixth Buford Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

612.   The property securing the Sixth Buford Loan completed a modification program and was sold to an alternate investor.  As a result of that process, Wells Fargo incurred a loss with respect to the Sixth Buford Loan.

613.   On or around October 6, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Sixth Buford Loan and/or indemnify Wells Fargo for its loss on the Sixth Buford Loan and to pay fees and penalties as specified in the Contract.

614.   Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Sixth Buford Loan and refused to pay fees and penalties as specified in the Contract.

615.     The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Sixth Buford Loan and pay fees and penalties under the Contract is at least $77,886.95.

### 83.     The "Fourth Stone Mountain Loan"

616.     On or around February 14, 2007, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 8336) secured by a property in Stone Mountain, Georgia (the "Fourth Stone Mountain Loan").  A copy of the portion of the Loan Purchase Schedule, dated February 14, 2007, reflecting Wells Fargo's purchase of the Fourth Stone Mountain Loan is attached hereto as Exhibit 84.

617.     The appraised value for the property securing the Fourth Stone Mountain Loan was unsupported by the original appraisal report included in the loan file.

618.     The Fourth Stone Mountain Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Fourth Stone Mountain Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

619.     The property securing the Fourth Stone Mountain Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the Fourth Stone Mountain Loan.

620.     On or around October 6, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to

repurchase the Fourth Stone Mountain Loan and/or indemnify Wells Fargo for its loss on the Fourth Stone Mountain Loan and to pay fees and penalties as specified in the Contract.

621.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Fourth Stone Mountain Loan and refused to pay fees and penalties as specified in the Contract.

622.    The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Fourth Stone Mountain Loan and pay fees and penalties under the Contract is at least $155,618.00.

### 84.    The "Second Lilburn Loan"

623.    On or around August 13, 2007, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 5041) secured by a property in Lilburn, Georgia (the "Second Lilburn Loan").  A copy of the portion of the Loan Purchase Schedule, dated August 13, 2007, reflecting Wells Fargo's purchase of the Second Lilburn Loan is attached hereto as Exhibit 85.

624.    The mortgage insurance on the property securing the Second Lilburn Loan was rescinded.

625.    The Second Lilburn Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Second Lilburn Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

626.    The property securing the Second Lilburn Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the Second Lilburn Loan.

627.     On or around October 6, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Second Lilburn Loan and/or indemnify Wells Fargo for its loss on the Second Lilburn Loan and to pay fees and penalties as specified in the Contract.

628.     Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Second Lilburn Loan and refused to pay fees and penalties as specified in the Contract.

629.     The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Second Lilburn Loan and pay fees and penalties under the Contract is at least $177,057.55.

### 85.     The "Second Suwanee Loan"

630.     On or around August 8, 2007, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 8686) secured by a property in Suwanee, Georgia (the "Second Suwanee Loan").  A copy of the portion of the Loan Purchase Schedule, dated August 8, 2007, reflecting Wells Fargo's purchase of the Second Suwanee Loan is attached hereto as Exhibit 86.

631.     The loan file for the Second Suwanee Loan contained misrepresentations regarding the income and/or assets of the borrower for that loan.

632.     The Second Suwanee Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Second Suwanee Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

633.    The property securing the Second Suwanee Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the Second Suwanee Loan.

634.    On or around October 6, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Second Suwanee Loan and/or indemnify Wells Fargo for its loss on the Second Suwanee Loan and to pay fees and penalties as specified in the Contract.

635.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Second Suwanee Loan and refused to pay fees and penalties as specified in the Contract.

636.    The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Second Suwanee Loan and pay fees and penalties under the Contract is at least $126,285.43.

### 86.    The "First Marietta Loan"

637.    On or around November 28, 2007, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 5015) secured by a property in Marietta, Georgia (the "First Marietta Loan").  A copy of the portion of the Loan Purchase Schedule, dated November 28, 2007, reflecting Wells Fargo's purchase of the First Marietta Loan is attached hereto as Exhibit 87.

638.    The loan file for the First Marietta Loan contained misrepresentations regarding the income and/or assets of the borrower for that loan.

639.     The First Marietta Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the First Marietta Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

640.     The property securing the First Marietta Loan completed a modification program.  As a result of that process, Wells Fargo incurred a loss with respect to the First Marietta Loan.

641.     On or around October 6, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the First Marietta Loan and/or indemnify Wells Fargo for its loss on the First Marietta Loan and to pay fees and penalties as specified in the Contract.

642.     Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the First Marietta Loan and refused to pay fees and penalties as specified in the Contract.

643.     The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the First Marietta Loan and pay fees and penalties under the Contract is at least $57,249.78.

### 87.     The "St. Paul Loan"

644.     On or around November 6, 2008, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 8776) secured by a property in St. Paul, Minnesota (the "St. Paul Loan").  A copy of the portion of the Loan Purchase Schedule, dated November 6, 2008, reflecting Wells Fargo's purchase of the St. Paul Loan is attached hereto as Exhibit 88.

645.    The appraised value for the property securing the St. Paul Loan was unsupported by the original appraisal report included in the loan file.

646.    The St. Paul Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the St. Paul Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

647.    The property securing the St. Paul Loan completed a modification program. As a result of that process, Wells Fargo incurred a loss with respect to the St. Paul Loan.

648.    On or around October 6, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the St. Paul Loan and/or indemnify Wells Fargo for its loss on the St. Paul Loan and to pay fees and penalties as specified in the Contract.

649.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the St. Paul Loan and refused to pay fees and penalties as specified in the Contract.

650.    The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the St. Paul Loan and pay fees and penalties under the Contract is at least $78,919.16.

## 88.    The "Seventh Duluth Loan"

651.    On or around June 4, 2008, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 4643) secured by a property in Duluth, Georgia (the "Seventh Duluth Loan").  A copy

of the portion of the Loan Purchase Schedule, dated June 4, 2008, reflecting Wells Fargo's purchase of the Seventh Duluth Loan is attached hereto as Exhibit 89.

652.    The mortgage insurance on the property securing the Seventh Duluth Loan was rescinded.

653.    The Seventh Duluth Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Seventh Duluth Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

654.    The property securing the Seventh Duluth Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the Seventh Duluth Loan.

655.    On or around October 6, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Seventh Duluth Loan and/or indemnify Wells Fargo for its loss on the Seventh Duluth Loan and to pay fees and penalties as specified in the Contract.

656.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Seventh Duluth Loan and refused to pay fees and penalties as specified in the Contract.

657.    The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Seventh Duluth Loan and pay fees and penalties under the Contract is at least $37,460.97.

### 89.    The "Third Dallas Loan"

658.    On or around July 10, 2006, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 5202) secured by a property in Dallas, Georgia (the "Third Dallas Loan").  A copy of the portion of the Loan Purchase Schedule, dated July 10, 2006, reflecting Wells Fargo's purchase of the Third Dallas Loan is attached hereto as Exhibit 90.

659.    The mortgage insurance on the property securing the Third Dallas Loan was rescinded.

660.    The Third Dallas Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Third Dallas Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

661.    The property securing the Third Dallas Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the Third Dallas Loan.

662.    On or around October 6, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Third Dallas Loan and/or indemnify Wells Fargo for its loss on the Third Dallas Loan and to pay fees and penalties as specified in the Contract.

663.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Third Dallas Loan and refused to pay fees and penalties as specified in the Contract.

664.     The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Third Dallas Loan and pay fees and penalties under the Contract is at least $92,535.22.

### 90.     The "Seventh Buford Loan"

665.     On or around September 8, 2005, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 1011) secured by a property in Buford, Georgia (the "Seventh Buford Loan").  A copy of the portion of the Loan Purchase Schedule, dated September 8, 2005, reflecting Wells Fargo's purchase of the Seventh Buford Loan is attached hereto as Exhibit 91.

666.     The loan file for the Seventh Buford Loan contained misrepresentations regarding the income and/or assets of the borrower for that loan.

667.     Additionally, the appraised value for the property securing the Seventh Buford Loan was unsupported by the original appraisal report included in the loan file.

668.     The Seventh Buford Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Seventh Buford Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

669.     The property securing the Seventh Buford Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the Seventh Buford Loan.

670.     On or around October 20, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to

repurchase the Seventh Buford Loan and/or indemnify Wells Fargo for its loss on the Seventh Buford Loan and to pay fees and penalties as specified in the Contract.

671.     Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Seventh Buford Loan and refused to pay fees and penalties as specified in the Contract.

672.     The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Seventh Buford Loan and pay fees and penalties under the Contract is at least $109,027.61.

### 91.     The "Second Loganville Loan"

673.     On or around April 11, 2008, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 3885) secured by a property in Loganville, Georgia (the "Second Loganville Loan"). A copy of the portion of the Loan Purchase Schedule, dated April 10, 2008, reflecting Wells Fargo's purchase of the Second Loganville Loan is attached hereto as Exhibit 92.

674.     The appraised value for the property securing the Second Loganville Loan was unsupported by the original appraisal report included in the loan file.

675.     The Second Loganville Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Second Loganville Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

676.     The property securing the Second Loganville Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the Second Loganville Loan.

677.    On or around October 20, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Second Loganville Loan and/or indemnify Wells Fargo for its loss on the Second Loganville Loan and to pay fees and penalties as specified in the Contract.

678.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Second Loganville Loan and refused to pay fees and penalties as specified in the Contract.

679.    The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Second Loganville Loan and pay fees and penalties under the Contract is at least $64,899.88.

## 92.    The "First Cumming Loan"

680.    On or around June 29, 2007, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 1968) secured by a property in Cumming, Georgia (the "First Cumming Loan").  A copy of the portion of the Loan Purchase Schedule, dated June 28, 2007, reflecting Wells Fargo's purchase of the First Cumming Loan is attached hereto as Exhibit 93.

681.    The appraised value for the property securing the First Cumming Loan was unsupported by the original appraisal report included in the loan file.

682.    The First Cumming Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the First Cumming Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

683.     The property securing the First Cumming Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the First Cumming Loan.

684.     On or around November 4, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the First Cumming Loan and/or indemnify Wells Fargo for its loss on the First Cumming Loan and to pay fees and penalties as specified in the Contract.

685.     Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the First Cumming Loan and refused to pay fees and penalties as specified in the Contract.

686.     The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the First Cumming Loan and pay fees and penalties under the Contract is at least $163,137.62.

### 93.     The "Third Suwanee Loan"

687.     On or around December 13, 2005, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 8236) secured by a property in Suwanee, Georgia (the "Third Suwanee Loan").  A copy of the portion of the Loan Purchase Schedule, dated December 12, 2005, reflecting Wells Fargo's purchase of the Third Suwanee Loan is attached hereto as Exhibit 94.

688.     The property securing the Third Suwanee Loan contained undisclosed mortgages.

689.    The Third Suwanee Loan did not meet the requirements of the Seller

Guide, and Terrace Mortgage's sale of the Third Suwanee Loan constituted a violation of

Terrace Mortgage's contractual representations and warranties to Wells Fargo.

690.    The property securing the Third Suwanee Loan was sold through the REO

Process.  As a result of that process, Wells Fargo incurred a loss with respect to the Third

Suwanee Loan.

691.    On or around November 4, 2011, Wells Fargo sent an invoice to Terrace

Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to

repurchase the Third Suwanee Loan and/or indemnify Wells Fargo for its loss on the

Third Suwanee Loan and to pay fees and penalties as specified in the Contract.

692.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it

incurred on the Third Suwanee Loan and refused to pay fees and penalties as specified in

the Contract.

693.    The amount that Terrace Mortgage currently owes to Wells Fargo to

indemnify Wells Fargo for its loss on the Third Suwanee Loan and pay fees and penalties

under the Contract is at least $89,986.50.

### 94.    The "Fifth Lawrenceville Loan"

694.    On or around June 7, 2006, Terrace Mortgage sold to Wells Fargo a

residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan

are 7037) secured by a property in Lawrenceville, Georgia (the "Fifth Lawrenceville

Loan").  A copy of the portion of the Loan Purchase Schedule, dated June 7, 2006,

reflecting Wells Fargo's purchase of the Fifth Lawrenceville Loan is attached hereto as Exhibit 95.

695.    The loan file for the Fifth Lawrenceville Loan contained undisclosed mortgages.

696.    The Fifth Lawrenceville Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Fifth Lawrenceville Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

697.    The property securing the Fifth Lawrenceville Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the Fifth Lawrenceville Loan.

698.    On or around November 18, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Fifth Lawrenceville Loan and/or indemnify Wells Fargo for its loss on the Fifth Lawrenceville Loan and to pay fees and penalties as specified in the Contract.

699.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Fifth Lawrenceville Loan and refused to pay fees and penalties as specified in the Contract.

700.    The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Fifth Lawrenceville Loan and pay fees and penalties under the Contract is at least $66,323.71.

### 95.    The "Eighth Buford Loan"

701.    On or around December 31, 2007, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 6983) secured by a property in Buford, Georgia (the "Eighth Buford Loan").  A copy of the portion of the Loan Purchase Schedule, dated December 31, 2007, reflecting Wells Fargo's purchase of the Eighth Buford Loan is attached hereto as Exhibit 96.

702.    The loan file for the Eighth Buford Loan had a manufactured home issue.

703.    The Eighth Buford Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Eighth Buford Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

704.    The property securing the Eighth Buford Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the Eighth Buford Loan.

705.    On or around December 6, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Eighth Buford Loan and/or indemnify Wells Fargo for its loss on the Eighth Buford Loan and to pay fees and penalties as specified in the Contract.

706.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Eighth Buford Loan and refused to pay fees and penalties as specified in the Contract.

707.    The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Eighth Buford Loan and pay fees and penalties under the Contract is at least $224,003.09.

### 96.    The "Fourth Suwanee Loan"

708.    On or around August 2, 2007, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 3004) secured by a property in Suwanee, Georgia (the "Fourth Suwanee Loan").  A copy of the portion of the Loan Purchase Schedule, dated August 2, 2007, reflecting Wells Fargo's purchase of the Fourth Suwanee Loan is attached hereto as Exhibit 97.

709.    The loan file for the Fourth Suwanee Loan contained misrepresentations regarding the income and/or assets of the borrower for that loan.

710.    The Fourth Suwanee Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Fourth Suwanee Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

711.    The property securing the Fourth Suwanee Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the Fourth Suwanee Loan.

712.    On or around December 20, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Fourth Suwanee Loan and/or indemnify Wells Fargo for its loss on the Fourth Suwanee Loan and to pay fees and penalties as specified in the Contract.

713.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Fourth Suwanee Loan and refused to pay fees and penalties as specified in the Contract.

714.    The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Fourth Suwanee Loan and pay fees and penalties under the Contract is at least $160,471.86.

## 97.    The "Commerce Loan"

715.    On or around April 17, 2007, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 6001) secured by a property in Commerce, Georgia (the "Commerce Loan").  A copy of the portion of the Loan Purchase Schedule, dated April 17, 2007, reflecting Wells Fargo's purchase of the Commerce Loan is attached hereto as Exhibit 98.

716.    The loan file for the Commerce Loan contained misrepresentations regarding the income and/or assets of the borrower for that loan.

717.    The Commerce Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Commerce Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

718.    The property securing the Commerce Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the Commerce Loan.

719.    On or around December 20, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to

repurchase the Commerce Loan and/or indemnify Wells Fargo for its loss on the

Commerce Loan and to pay fees and penalties as specified in the Contract.

720.     Terrace Mortgage refused to indemnify Wells Fargo for the loss that it

incurred on the Commerce Loan and refused to pay fees and penalties as specified in the

Contract.

721.     The amount that Terrace Mortgage currently owes to Wells Fargo to

indemnify Wells Fargo for its loss on the Commerce Loan and pay fees and penalties

under the Contract is at least $297,521.10.

### 98.     The "Sixth Lawrenceville Loan"

722.     On or around August 1, 2008, Terrace Mortgage sold to Wells Fargo a

residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan

are 7178) secured by a property in Lawrenceville, Georgia (the "Sixth Lawrenceville

Loan").  A copy of the portion of the Loan Purchase Schedule, dated August 1, 2008,

reflecting Wells Fargo's purchase of the Sixth Lawrenceville Loan is attached hereto as

Exhibit 99.

723.     The appraised value for the property securing the Sixth Lawrenceville Loan

was unsupported by the original appraisal report included in the loan file.

724.     The Sixth Lawrenceville Loan did not meet the requirements of the Seller

Guide, and Terrace Mortgage's sale of the Sixth Lawrenceville Loan constituted a

violation of Terrace Mortgage's contractual representations and warranties to Wells

Fargo.

725.    The property securing the Sixth Lawrenceville Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the Sixth Lawrenceville Loan.

726.    On or around December 28, 2011, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Sixth Lawrenceville Loan and/or indemnify Wells Fargo for its loss on the Sixth Lawrenceville Loan and to pay fees and penalties as specified in the Contract.

727.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Sixth Lawrenceville Loan and refused to pay fees and penalties as specified in the Contract.

728.    The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Sixth Lawrenceville Loan and pay fees and penalties under the Contract is at least $84,036.57.

### 99.    The "Second Conyers Loan"

729.    On or around July 26, 2007, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 5388) secured by a property in Conyers, Georgia (the "Second Conyers Loan").  A copy of the portion of the Loan Purchase Schedule, dated July 26, 2007, reflecting Wells Fargo's purchase of the Second Conyers Loan is attached hereto as Exhibit 100.

730.    The mortgage insurance on the property securing the Second Conyers Loan was rescinded.

731.     The Second Conyers Loan did not meet the requirements of the Seller

Guide, and Terrace Mortgage's sale of the Second Conyers Loan constituted a violation of

Terrace Mortgage's contractual representations and warranties to Wells Fargo.

732.     The property securing the Second Conyers Loan was sold through the REO

Process.  As a result of that process, Wells Fargo incurred a loss with respect to the

Second Conyers Loan.

733.     On or around January 6, 2012, Wells Fargo sent an invoice to Terrace

Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to

repurchase the Second Conyers Loan and/or indemnify Wells Fargo for its loss on the

Second Conyers Loan and to pay fees and penalties as specified in the Contract.

734.     Terrace Mortgage refused to indemnify Wells Fargo for the loss that it

incurred on the Second Conyers Loan and refused to pay fees and penalties as specified in

the Contract.

735.     The amount that Terrace Mortgage currently owes to Wells Fargo to

indemnify Wells Fargo for its loss on the Second Conyers Loan and pay fees and penalties

under the Contract is at least $250,211.57.

### 100.    The "Morrow Loan"

736.     On or around November 30, 2007, Terrace Mortgage sold to Wells Fargo a

residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan

are 6895) secured by a property in Morrow, Georgia (the "Morrow Loan").  A copy of the

portion of the Loan Purchase Schedule, dated November 30, 2007, reflecting Wells

Fargo's purchase of the Morrow Loan is attached hereto as Exhibit 101.

737.    The appraised value for the property securing the Morrow Loan was unsupported by the original appraisal report included in the loan file.

738.    The Morrow Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Morrow Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

739.    The property securing the Morrow Loan was sold through the short-sale process.  As a result of that process, Wells Fargo incurred a loss with respect to the Morrow Loan.

740.    On or around January 6, 2012, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Morrow Loan and/or indemnify Wells Fargo for its loss on the Morrow Loan and to pay fees and penalties as specified in the Contract.

741.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Morrow Loan and refused to pay fees and penalties as specified in the Contract.

742.    The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Morrow Loan and pay fees and penalties under the Contract is at least $74,633.35.

### 101.    The "Seventh Lawrenceville Loan"

743.    On or around September 6, 2007, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 3866) secured by a property in Lawrenceville, Georgia (the "Seventh Lawrenceville

Loan"). A copy of the portion of the Loan Purchase Schedule, dated September 6, 2007, reflecting Wells Fargo's purchase of the Seventh Lawrenceville Loan is attached hereto as Exhibit 102.

744.    The loan file for the Seventh Lawrenceville Loan contained excessive seller contributions.

745.    The Seventh Lawrenceville Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Seventh Lawrenceville Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

746.    The property securing the Seventh Lawrenceville Loan was sold through the REO Process. As a result of that process, Wells Fargo incurred a loss with respect to the Seventh Lawrenceville Loan.

747.    On or around February 6, 2012, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Seventh Lawrenceville Loan and/or indemnify Wells Fargo for its loss on the Seventh Lawrenceville Loan and to pay fees and penalties as specified in the Contract.

748.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Seventh Lawrenceville Loan and refused to pay fees and penalties as specified in the Contract.

749.    The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Seventh Lawrenceville Loan and pay fees and penalties under the Contract is at least $83,590.36.

### 102.    The "Eighth Duluth Loan"

750.    On or around March 11, 2008, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 9355) secured by a property in Duluth, Georgia (the "Eighth Duluth Loan").  A copy of the portion of the Loan Purchase Schedule, dated March 11, 2008, reflecting Wells Fargo's purchase of the Eighth Duluth Loan is attached hereto as Exhibit 103.

751.    The loan file for the Eighth Duluth Loan contained misrepresentations regarding the employment of the borrower for that loan.

752.    The Eighth Duluth Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Eighth Duluth Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

753.    The property securing the Eighth Duluth Loan was sold through the short-sale process.  As a result of that process, Wells Fargo incurred a loss with respect to the Eighth Duluth Loan.

754.    On or around March 20, 2012, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Eighth Duluth Loan and/or indemnify Wells Fargo for its loss on the Eighth Duluth Loan and to pay fees and penalties as specified in the Contract.

755.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Eighth Duluth Loan and refused to pay fees and penalties as specified in the Contract.

756.    The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Eighth Duluth Loan and pay fees and penalties under the Contract is at least $95,238.86.

### 103.    The "Ninth Duluth Loan"

757.    On or around May 26, 2006, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 2728) secured by a property in Duluth, Georgia (the "Ninth Duluth Loan").  A copy of the portion of the Loan Purchase Schedule, dated May 25, 2006, reflecting Wells Fargo's purchase of the Ninth Duluth Loan is attached hereto as Exhibit 104.

758.    The loan file for the Ninth Duluth Loan contained misrepresentations regarding the income and/or assets of the borrower for that loan.

759.    The Ninth Duluth Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Ninth Duluth Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

760.    The property securing the Ninth Duluth Loan was sold through the short-sale process.  As a result of that process, Wells Fargo incurred a loss with respect to the Ninth Duluth Loan.

761.    On or around March 20, 2012, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Ninth Duluth Loan and/or indemnify Wells Fargo for its loss on the Ninth Duluth Loan and to pay fees and penalties as specified in the Contract.

762.     Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Ninth Duluth Loan and refused to pay fees and penalties as specified in the Contract.

763.     The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Ninth Duluth Loan and pay fees and penalties under the Contract is at least $50,169.03.

### 104.    The "Second Marietta Loan"

764.     On or around August 7, 2007, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 0195) secured by a property in Marietta, Georgia (the "Second Marietta Loan").  A copy of the portion of the Loan Purchase Schedule, dated August 7, 2007, reflecting Wells Fargo's purchase of the Second Marietta Loan is attached hereto as Exhibit 105.

765.     The loan file for the Second Marietta Loan contained misrepresentations regarding the income and/or assets of the borrower for that loan.

766.     The Second Marietta Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Second Marietta Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

767.     The property securing the Second Marietta Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the Second Marietta Loan.

768.     On or around April 5, 2012, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to

repurchase the Second Marietta Loan and/or indemnify Wells Fargo for its loss on the

Second Marietta Loan and to pay fees and penalties as specified in the Contract.

769. Terrace Mortgage refused to indemnify Wells Fargo for the loss that it

incurred on the Second Marietta Loan and refused to pay fees and penalties as specified in

the Contract.

770. The amount that Terrace Mortgage currently owes to Wells Fargo to

indemnify Wells Fargo for its loss on the Second Marietta Loan and pay fees and penalties

under the Contract is at least $176,675.20.

### 105. The "Third Douglasville Loan"

771. On or around December 3, 2007, Terrace Mortgage sold to Wells Fargo a

residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan

are 6812) secured by a property in Douglasville, Georgia (the "Third Douglasville Loan").

A copy of the portion of the Loan Purchase Schedule, dated December 3, 2007, reflecting

Wells Fargo's purchase of the Third Douglasville Loan is attached hereto as Exhibit 106.

772. The appraised value for the property securing the Third Douglasville Loan

was unsupported by the original appraisal report included in the loan file.

773. The Third Douglasville Loan did not meet the requirements of the Seller

Guide, and Terrace Mortgage's sale of the Third Douglasville Loan constituted a violation

of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

774. The property securing the Third Douglasville Loan was sold through the

REO Process. As a result of that process, Wells Fargo incurred a loss with respect to the

Third Douglasville Loan.

775. On or around April 5, 2012, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Third Douglasville Loan and/or indemnify Wells Fargo for its loss on the Third Douglasville Loan and to pay fees and penalties as specified in the Contract.

776. Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Third Douglasville Loan and refused to pay fees and penalties as specified in the Contract.

777. The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Third Douglasville Loan and pay fees and penalties under the Contract is at least $80,014.70.

### 106. The "Second Decatur Loan"

778. On or around January 19, 2007, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 2828) secured by a property in Decatur, Georgia (the "Second Decatur Loan"). A copy of the portion of the Loan Purchase Schedule, dated January 19, 2007, reflecting Wells Fargo's purchase of the Second Decatur Loan is attached hereto as Exhibit 107.

779. The loan file for the Second Decatur Loan contained excessive seller contributions.

780. The Second Decatur Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Second Decatur Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

781.    The property securing the Second Decatur Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the Second Decatur Loan.

782.    On or around May 18, 2012, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Second Decatur Loan and/or indemnify Wells Fargo for its loss on the Second Decatur Loan and to pay fees and penalties as specified in the Contract.

783.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Second Decatur Loan and refused to pay fees and penalties as specified in the Contract.

784.    The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Second Decatur Loan and pay fees and penalties under the Contract is at least $63,672.34.

### 107.    The "Auburn Loan"

785.    On or around September 15, 2008, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 3045) secured by a property in Auburn, Georgia (the "Auburn Loan").  A copy of the portion of the Loan Purchase Schedule, dated September 15, 2008, reflecting Wells Fargo's purchase of the Auburn Loan is attached hereto as Exhibit 108.

786.    The appraised value for the property securing the Auburn Loan was unsupported by the original appraisal report included in the loan file.

787.    The Auburn Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Auburn Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

788.    The property securing the Auburn Loan was sold through the REO Process. As a result of that process, Wells Fargo incurred a loss with respect to the Auburn Loan.

789.    On or around May 18, 2012, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Auburn Loan and/or indemnify Wells Fargo for its loss on the Auburn Loan and to pay fees and penalties as specified in the Contract.

790.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Auburn Loan and refused to pay fees and penalties as specified in the Contract.

791.    The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Auburn Loan and pay fees and penalties under the Contract is at least $59,552.98.

## 108.    The "Second Cumming Loan"

792.    On or around March 13, 2008, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 3851) secured by a property in Cumming, Georgia (the "Second Cumming Loan").  A copy of the portion of the Loan Purchase Schedule, dated March 13, 2008, reflecting Wells Fargo's purchase of the Second Cumming Loan is attached hereto as Exhibit 109.

793.    The loan file for the Second Cumming Loan contained misrepresentations regarding the income and/or assets of the borrower for that loan.

794.    The Second Cumming Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Second Cumming Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

795.    The property securing the Second Cumming Loan was sold through the short-sale process.  As a result of that process, Wells Fargo incurred a loss with respect to the Second Cumming Loan.

796.    On or around June 6, 2012, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Second Cumming Loan and/or indemnify Wells Fargo for its loss on the Second Cumming Loan and to pay fees and penalties as specified in the Contract.

797.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Second Cumming Loan and refused to pay fees and penalties as specified in the Contract.

798.    The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Second Cumming Loan and pay fees and penalties under the Contract is at least $114,686.18.

### 109.    The "Ninth Atlanta Loan"

799.    On or around May 9, 2006, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 8098) secured by a property in Atlanta, Georgia (the "Ninth Atlanta Loan").  A copy

of the portion of the Loan Purchase Schedule, dated May 9, 2006, reflecting Wells Fargo's purchase of the Ninth Atlanta Loan is attached hereto as Exhibit 110.

800.    The mortgage insurance on the property securing the Ninth Atlanta Loan was rescinded.

801.    The Ninth Atlanta Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Ninth Atlanta Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

802.    The property securing the Ninth Atlanta Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the Ninth Atlanta Loan.

803.    On or around June 6, 2012, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Ninth Atlanta Loan and/or indemnify Wells Fargo for its loss on the Ninth Atlanta Loan and to pay fees and penalties as specified in the Contract.

804.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the Ninth Atlanta Loan and refused to pay fees and penalties as specified in the Contract.

805.    The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the Ninth Atlanta Loan and pay fees and penalties under the Contract is at least $100,388.41.

### 110.   The "McDonough Loan"

806.   On or around April 23, 2008, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 7917) secured by a property in McDonough, Georgia (the "McDonough Loan").  A copy of the portion of the Loan Purchase Schedule, dated April 23, 2008, reflecting Wells Fargo's purchase of the McDonough Loan is attached hereto as Exhibit 111.

807.   The appraised value for the property securing the McDonough Loan was unsupported by the original appraisal report included in the loan file.

808.   The McDonough Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the McDonough Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

809.   The property securing the McDonough Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the McDonough Loan.

810.   On or around June 20, 2012, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the McDonough Loan and/or indemnify Wells Fargo for its loss on the McDonough Loan and to pay fees and penalties as specified in the Contract.

811.   Terrace Mortgage refused to indemnify Wells Fargo for the loss that it incurred on the McDonough Loan and refused to pay fees and penalties as specified in the Contract.

812.    The amount that Terrace Mortgage currently owes to Wells Fargo to indemnify Wells Fargo for its loss on the McDonough Loan and pay fees and penalties under the Contract is at least $100,714.95.

### 111.   The "Jonesboro Loan"

813.    On or around May 23, 2005, Terrace Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 8138) secured by a property in Jonesboro, Georgia (the "Jonesboro Loan").  A copy of the portion of the Loan Purchase Schedule, dated May 23, 2005, reflecting Wells Fargo's purchase of the Jonesboro Loan is attached hereto as Exhibit 112.

814.    The appraised value for the property securing the Jonesboro Loan was unsupported by the original appraisal report included in the loan file.

815.    The Jonesboro Loan did not meet the requirements of the Seller Guide, and Terrace Mortgage's sale of the Jonesboro Loan constituted a violation of Terrace Mortgage's contractual representations and warranties to Wells Fargo.

816.    The property securing the Jonesboro Loan was sold through the REO Process.  As a result of that process, Wells Fargo incurred a loss with respect to the Jonesboro Loan.

817.    On or around June 20, 2012, Wells Fargo sent an invoice to Terrace Mortgage for the amount that Terrace Mortgage owed to Wells Fargo at that time to repurchase the Jonesboro Loan and/or indemnify Wells Fargo for its loss on the Jonesboro Loan and to pay fees and penalties as specified in the Contract.

818.    Terrace Mortgage refused to indemnify Wells Fargo for the loss that it

incurred on the Jonesboro Loan and refused to pay fees and penalties as specified in the

Contract.

819.    The amount that Terrace Mortgage currently owes to Wells Fargo to

indemnify Wells Fargo for its loss on the Jonesboro Loan and pay fees and penalties under

the Contract is at least $165,127.70.

### B.    Terrace Mortgage Has Refused to Pay Additional Fees and Expenses Due Under the Contract for Terrace Mortgage's Failure to Deliver Loans or Loan Documents.

820.    The Contract contains provisions that require Terrace Mortgage to pay

costs and/or fees to Wells Fargo for situations in which Terrace Mortgage:

a.  Sells loans to Wells Fargo that subsequently require funding

adjustments;

b.  committed to sell loans to Wells Fargo but failed to do so;

c.  failed to correctly disclose mortgage-insurance premiums on the final

Truth-in-Lending statement;

d.  offered loans to Wells Fargo that did not close, were returned, or were

funded but for which underwriting fees were not collected at the time of

purchase, in violation of sections 500.01, 800.03, and/or 805.01 of the

Seller Guide;

e.  failed to ensure that taxes were paid on a timely basis, in violation of

sections 560.06 through 560.07 of the Seller Guide;

f.  failed to properly register or transfer loans with MERS;

g.  failed to provide final loan documents, such as original mortgages or deeds of trust, in violation of sections 565.01 and 565.06 of the Seller Guide;

h.  sold loans to Wells Fargo that had title defects associated with those loans;

i.  understated charges by more than the allowable tolerance under the Truth in Lending Act; or

j.  locked loans for sale to Wells Fargo that did not fund.

821.   Terrace Mortgage failed to comply with the contractual provisions described above with respect to two tax penalties and two miscellaneous fees, and owes the costs and/or fees identified in the Client Billing Invoice attached hereto as Exhibit 113.

822.   Between the period around January 2010 and May–June 2012, Wells Fargo sent Terrace Mortgage invoices that identified penalties and fees that Terrace Mortgage owes to Wells Fargo under the terms of the Contract and requested payment.

823.   In violation of the Contract, Terrace Mortgage has refused to pay Wells Fargo for costs and fees in excess of $19,696.35, with interest accruing on that amount, as set forth in the Client Billing Invoice attached hereto as Exhibit 113.

## COUNT I
### (Breach Of Contract — Specific Performance)

824.   Terrace Mortgage breached the Contract when it sold to Wells Fargo the New Hebron Loan, the First Atlanta Loan, the Rincon Loan, the Tucker Loan, the Second Buford Loan, the Second Atlanta Loan, the Knoxville Loan, the Monroe Loan, the First

Lithonia Loan, the Melbourne Loan, the First Riverdale Loan, and the Third Buford Loan. With respect to each of these sales, Terrace Mortgage violated contractual representations and warranties as set forth in Seller Guide.

825.    The Contract requires Terrace Mortgage to repurchase the New Hebron Loan, the First Atlanta Loan, the Rincon Loan, the Tucker Loan, the Second Buford Loan, the Second Atlanta Loan, the Knoxville Loan, the Monroe Loan, the First Lithonia Loan, the Melbourne Loan, the First Riverdale Loan, and the Third Buford Loan as a consequence of Terrace Mortgage's breach of contractual representations and warranties set forth in the Seller Guide.

826.    Wells Fargo notified Terrace Mortgage that Terrace Mortgage had breached contractual representations and warranties for the New Hebron Loan, the First Atlanta Loan, the Rincon Loan, the Tucker Loan, the Second Buford Loan, the Second Atlanta Loan, the Knoxville Loan, the Monroe Loan, the First Lithonia Loan, the Melbourne Loan, the First Riverdale Loan, and the Third Buford Loan, and demanded that Terrace Mortgage repurchase those loans.

827.    To date, Terrace Mortgage has refused to repurchase the New Hebron Loan, the First Atlanta Loan, the Rincon Loan, the Tucker Loan, the Second Buford Loan, the Second Atlanta Loan, the Knoxville Loan, the Monroe Loan, the First Lithonia Loan, the Melbourne Loan, the First Riverdale Loan, and the Third Buford Loan.

828.    Terrace Mortgage has materially breached the Contract by refusing to honor its obligation to repurchase the New Hebron Loan, the First Atlanta Loan, the Rincon Loan, the Tucker Loan, the Second Buford Loan, the Second Atlanta Loan, the

Knoxville Loan, the Monroe Loan, the First Lithonia Loan, the Melbourne Loan, the First

Riverdale Loan, and the Third Buford Loan.

829.    Wells Fargo is entitled to an order requiring Terrace Mortgage to

repurchase the New Hebron Loan, the First Atlanta Loan, the Rincon Loan, the Tucker

Loan, the Second Buford Loan, the Second Atlanta Loan, the Knoxville Loan, the Monroe

Loan, the First Lithonia Loan, the Melbourne Loan, the First Riverdale Loan, and the

Third Buford Loan.

## COUNT II
### (<u>Breach of Contract — Loan Representations and Warranties</u>)

830.    Terrace Mortgage breached its contractual representations and warranties as

set forth in the Seller Guide with regard to the sale of the New Hebron Loan, the Laurel

Loan, the First Atlanta Loan, the Rincon Loan, the Detroit Loan, the Tucker Loan, the

First Buford Loan, the Bainbridge Loan, the Second Buford Loan, the Second Atlanta

Loan, the Third Atlanta Loan, the Knoxville Loan, the Monroe Loan, the First Lithonia

Loan, the Plantation Loan, the Melbourne Loan, the First Fayetteville Loan, the First

Dallas Loan, the First Duluth Loan, the First Riverdale Loan, the Second Riverdale Loan,

the First Tampa Loan, the First Stone Mountain Loan, the Greenville Loan, the Third

Buford Loan, the First Kissimmee Loan, the Second Kissimmee Loan, the Palm Coast

Loan, the First Douglasville Loan, the Dacula Loan, the Navarre Loan, the Norcross Loan,

the First Cape Coral Loan, the Second Lithonia Loan, the Fourth Atlanta Loan, the Port

Saint Lucie Loan, the First Loganville Loan, the Third Kissimmee Loan, the Second

Tampa Loan, the Covington Loan, the Brentwood Loan, the First Lilburn Loan, the First

Conyers Loan, the First Forest Park Loan, the First Alpharetta Loan, the Sugar Hill Loan, the Bay Saint Louis Loan, the Second Stone Mountain Loan, the Ashville Loan, the Fifth Atlanta Loan, the First Lawrenceville Loan, the Miramar Beach Loan, the Sixth Atlanta Loan, the College Park Loan, the Second Forest Park Loan, the Seventh Atlanta Loan, the Third Stone Mountain Loan, the First Decatur Loan, the Second Lawrenceville Loan, the Second Douglasville Loan, the Fourth Buford Loan, the Third Lawrenceville Loan, the Second Duluth Loan, the Chicago Loan, the Woodstock Loan, the Second Fayetteville Loan, the Fourth Lawrenceville Loan, the Third Lithonia Loan, the Second Alpharetta Loan, the Third Duluth Loan, the Fourth Duluth Loan, the Second Dallas Loan, the Eighth Atlanta Loan, the Riverview Loan, the First Suwanee Loan, the Fifth Duluth Loan, the Sixth Duluth Loan, the Second Cape Coral Loan, the Roswell Loan, the Fifth Buford Loan, the Fairburn Loan, the Sixth Buford Loan, the Fourth Stone Mountain Loan, the Second Lilburn Loan, the Second Suwanee Loan, the First Marietta Loan, the St. Paul Loan, the Seventh Duluth Loan, the Third Dallas Loan, the Seventh Buford Loan, the Second Loganville Loan, the First Cumming Loan, the Third Suwanee Loan, the Fifth Lawrenceville Loan, the Eighth Buford Loan, the Fourth Suwanee Loan, the Commerce Loan, the Sixth Lawrenceville Loan, the Second Conyers Loan, the Morrow Loan, the Seventh Lawrenceville Loan, the Eighth Duluth Loan, the Ninth Duluth Loan, the Second Marietta Loan, the Third Douglasville Loan, the Second Decatur Loan, the Auburn Loan, the Second Cumming Loan, the Ninth Atlanta Loan, the McDonough Loan, and the Jonesboro Loan (the "Full Set of Loans"), and Terrace Mortgage's sales of these Loans to Wells Fargo therefore breached the Contract.

831.     Wells Fargo has demanded, in accord with the Contract terms, that Terrace Mortgage repurchase and/or indemnify Wells Fargo for its losses on the Full Set of Loans. Terrace Mortgage has further breached the Contract by refusing to repurchase and/or indemnify Wells Fargo for its losses on the loans.

832.     Wells Fargo has demanded that Terrace Mortgage pay certain fees and costs, as specified in the Contract, arising from the Full Set of Loans.  Terrace Mortgage has further breached the Contract by failing to pay fees and costs for these loans as specified in the Contract.

833.     Wells Fargo has suffered damages as a result of Terrace Mortgage's breaches of the Contract in the amount of at least $14,816,148.53.  This amount includes the unpaid balance, accrued interest, escrow advance, and service-release premium, plus other fees and costs, for the Full Set of Loans.

## COUNT III
### (Breach Of Contract — Contractual Loan Costs and Fees)

834.     Wells Fargo incurred costs and/or fees with respect to two tax penalties and two miscellaneous fees associated with the loans that Terrace Mortgage sold or offered to sell to Wells Fargo.

835.     Wells Fargo billed Terrace Mortgage for those costs and fees, but Terrace Mortgage has refused to pay them.

836.     Terrace Mortgage breached the Contract through the foregoing acts and omissions.

837.     Wells Fargo has suffered damages as a result of Terrace Mortgage's breach of the Contract in the amount of at least $19,696.35.

## COUNT IV
### (Contractual Attorneys' Fees)

838.     Under the Contract, Terrace Mortgage agreed to indemnify Wells Fargo for all costs, including attorneys' fees, incurred by Wells Fargo in enforcing its rights under the Contract.

839.     As a result of Terrace Mortgage's failure to honor its contractual obligations, Wells Fargo has incurred costs and attorneys' fees to enforce its rights under the Contract.

840.     Wells Fargo is entitled to recover the attorneys' fees and related costs that it has incurred and will incur in prosecuting this lawsuit to enforce its rights under the Contract.

**WHEREFORE**, Wells Fargo Bank, N.A., respectfully asks that the Court:

1.     Enter an order requiring Terrace Mortgage to repurchase the New Hebron Loan, the First Atlanta Loan, the Rincon Loan, the Tucker Loan, the Second Buford Loan, the Second Atlanta Loan, the Knoxville Loan, the Monroe Loan, the First Lithonia Loan, the Melbourne Loan, the First Riverdale Loan, and the Third Buford Loan in accordance with the Contract;

2.     Enter judgment in favor of Wells Fargo and against Terrace Mortgage in the amount of all damages, costs, and expenses that Wells Fargo has suffered and will suffer in the future as a result of Terrace Mortgage's breaches of its contractual

obligations (an amount currently in excess of $14,835,844.88), plus all costs and

expenses (including attorneys' fees) that Wells Fargo incurs in connection with this

litigation, plus pre-judgment interest at the legal rate; and

    3.    Award any additional relief that the Court deems just and equitable.


Dated: June 24, 2013               FAEGRE BAKER DANIELS LLP


                      */s/Chuck F. Webber*
                      Charles F. Webber
                      Bar Number 215247
                      Adam J. Pabarcus
                      Bar Number 0392045
                      Attorneys for Plaintiff
                          Wells Fargo Bank, N.A.
                      FAEGRE BAKER DANIELS LLP
                      2200 Wells Fargo Center
                      90 South Seventh Street
                      Minneapolis, MN 55402-3901
                      Telephone: (612) 766-7000
                      Fax: (612) 766-1600
                      chuck.webber@FaegreBD.com
                      adam.pabarcus@FaegreBD.com

dms.us.49313617.01